David **SERVAIS** and Gloria P. Servais, individually and as husband and wife; Robert Murray and Sonya Murray, individually and as husband and wife; and Gordon Flood and Betty Flood, individually and as husband and wife, Plaintiffs,

v.

T.J. **MANAGEMENT OF MINNEAPOLIS, INC.,** d/b/a Gabby's and Gabby's Saloon and Eatery, a Minnesota Corporation; Jeffrey A. Ormond, individually and d/b/a T.J. Management of Minneapolis, Inc., d/b/a Gabby's and Gabby's Saloon and Eatery; Timothy Welch, individually and d/b/a T.J. Management of Minneapolis, Inc., d/b/a Gabby's and Gabby's Saloon and Eatery; Nichole L. Helms; Randy L. Helms; G & R Transportation, Inc., a Minnesota Corporation; Ronald L. Hyland, individually and d/b/a G & R Transportation, Inc.; Leonard Patraw;

The Soo Line Railroad Company, d/b/a CP Rail System, a corporation; and United States Fire Insurance Company, cl/b/a Crum and Forster Commercial Insurance Company, a foreign corporation, Defendants.

Civil File No. 97–406(PAM/JGL).

United States District Court,
D. Minnesota.

Aug. 12, 1997.

Stephen Shannon Eckman, Markus Clarance Yira, Eckman Strandness & Egan, Minneapolis, MN, for David Servais, Gloria P. Servais, Robert Murray, Sonya Murray.

Markus Clarance Yira, Eckman Strandness & Egan, Minneapolis, MN, Michael L.

Weiner, Yaeger Jungbauer Barczak & Roe, Minneapolis, MN, for Gordon Flood, Betty Flood.

Stephen P. Watters, Martha Mary Simonett, Mark A. Solheim, Rider Bennett Egan & Arundel, Minneapolis, MN, for T.J. Management of Minneapolis, Inc.

Steven Lars Viltoft, Angela C. Shackleford, LaBore & Giuliani, Hopkins, MN, for Nichole L. Helms, Randy L. Helms.

Mark A. Gwin, Cousineau McGuire & Anderson, Minneapolis, MN, for G & R Transp., Ronald L. Hyland, Leonard Patraw.

Susan Diane Thurmer, Diane Patricia Gerth, Spence Ricke & Thurmer, St. Paul, MN, for Soo Line R.Co.

Lawrence J. Skoglund, John R. Thomas, Erstad & Riemer, Minneapolis, MN, for U.S. Fire Ins.Co.

## MEMORANDUM AND ORDER

MAGNUSON, Chief Judge.

This matter is before the Court upon the following motions: (1) Defendant Soo Line Railroad Company's Motion for Summary Judgment; (2) Defendant United States Fire Insurance Company's Motion for Summary Judgment; and (3) Defendant Ronald Hyland, individually and doing business as G & R Transportation, Inc., and Defendant Leonard Patraw's Motion for Partial Summary Judgment. For the following reasons, the Court grants in part and denies in part Defendant Soo Line Railroad Company's Motion for Summary Judgment, grants Defendant United States Fire Insurance Company's Motion for Summary Judgment, and grants in part and denies in part Defendant Ronald Hyland, individually and doing business as G & R Transportation, Inc., and Defendant Leonard Patraw's Motion for Partial Summary Judgment.

## BACKGROUND

On the evening of November 20, 1993, Plaintiffs David Servais, Robert Murray and Gordon Flood (collectively "Plaintiffs") completed their shifts as train crew members for their employer, Defendant Soo Line Railroad Company ("Soo Line"). Plaintiffs' shifts ended when their train was midway between the Pig's Eye Yard in St. Paul, Minnesota, and the Humboldt Yard in Minneapolis. In accordance with customary practice, a taxicab was summoned to return Plaintiffs to the Pig's Eye Yard. To handle these types of transportation needs, Soo Line had entered into an agreement with Corporate Lodging Consultants, Inc. ("CLC") with the expectation that a division of CLC, Crew Transportation Services Company ("CTS"), would contract with local taxicab companies throughout the Soo Line system for transportation services. CTS had contracted with Defendant Ronald Hyland ("Hyland"), doing business as G & R Transportation,[1] to provide transportation services for Soo Line employees in the St. Paul area ("Transportation Agreement"). The vehicle that picked up Plaintiffs that night was driven by an employee of the taxicab company, Defendant Leonard Patraw ("Patraw").

During the ride back to St. Paul, the taxicab was involved in an accident with an automobile operated by Defendant Nichole Helms and owned by Defendant Randy Helms. Earlier that evening, Nichole Helms had been drinking at Gabby's Saloon, which is owned and operated by Defendant T.J. Management of Minneapolis, Inc. ("T. J. Management"). A blood-alcohol test showed that she was driving while intoxicated. As a result of the accident, Plaintiffs claim that they were severely injured and permanently disabled, preventing them from returning to work.

1. Defendant Hyland allegedly operated G & R Transportation as a sole proprietorship at the time of the events giving rise to this lawsuit. Hyland incorporated his taxicab business as a Minnesota corporation on March 15, 1994, taking the name G & R Transportation, Inc. In their Amended Complaint and motion memoranda, Plaintiffs use the identifier "Hyland" to refer to Defendant Ronald Hyland individually and doing business as G & R Transportation, the unincorporated sole proprietorship. In addition, Plaintiffs use the identifier "G & R" to refer to G & R Transportation, Inc., the incorporated taxicab business owned and operated by Defendant Hyland. Finally, when no relevant distinction exists, Plaintiffs identify Defendants Hyland, G & R, and Leonard Patraw as "the G & R Defendants." The Court adopts Plaintiffs' nomenclature for the purposes of this memorandum and order.

Plaintiffs, and their spouses, filed the present action in federal court on November 6, 1995. The Amended Complaint contains six counts asserting various statutory and common law causes of action. Count One alleges that Defendant T.J. Management and its owners, Defendants Jeffrey Ormond ("Ormond") and Timothy Welch ("Welch"), violated Minnesota's Dram Shop Act by selling intoxicating liquor to Nichole Helms when she was obviously intoxicated. Count Two contains allegations that Ms. Helms acted negligently when she drove while intoxicated and caused the accident that injured Plaintiffs. In Count Three, Plaintiffs allege that the G & R Defendants acted negligently in the operation of a common carrier taxicab service. Count Four contains allegations that Defendants G & R and Hyland breached their contract with Defendant Soo Line to provide $1.5 million in accident insurance and that Plaintiffs are entitled to such coverage as third-party beneficiaries or under an implied-contract-in-law theory. Count Five alleges that Defendant United States Fire Insurance Company ("U.S.Fire"), doing business as Crum and Forster Commercial Insurance Company, breached its contract by refusing to pay Plaintiffs $70,000 in underinsured motorist coverage pursuant to an insurance policy carried by Hyland and G & R ("Insurance Policy"). Finally, in Count Six, Plaintiffs allege that Defendant Soo Line violated provisions of the Federal Employers' Liability Act ("FELA" or "Act"), 45 U.S.C. §§ 51–60. Specifically, Plaintiffs claim that Soo Line failed to provide them with a reasonably safe place to work and with adequate automobile insurance coverage.

Soo Line filed cross-claims and counterclaims. In its cross-claims, Soo Line seeks contribution and indemnification from Defendants T.J. Management, Ormond, Welch, Ms. Helms, Mr. Helms, Hyland, and G & R for liabilities and costs resulting from the alleged injuries to Plaintiffs. Soo Line also alleges breach of contract against Hyland and G & R for failing to name it as an additional insured on the policy provided by U.S. Fire [2] Finally,

Soo Line alleges that U.S. Fire wrongfully breached its duty of defense and indemnification pursuant to the Insurance Policy obtained by Hyland and G & R, and seeks defense and indemnification from U.S. Fire. In its counterclaim, Soo Line seeks repayment and reimbursement of monies paid to Plaintiffs for injuries sustained as a result of the accident. In addition, Defendants T.J. Management, Ormond, and Welch cross-claim for contribution and indemnification from Defendants Ms. Helms, Mr. Helms, G & R, and Hyland. Similarly, the G & R Defendants cross-claim for contribution and indemnification from Defendants T.J. Management, Ormond, Welch, Ms. Helms, and Mr. Helms. Presently, Defendant Soo Line, Defendant U.S. Fire, and the G & R Defendants come before the Court moving for summary judgment on various aspects of this litigation. The Court now turns its attention to resolving the issues raised in these three motions.

## DISCUSSION

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219–20 (8th Cir.1992). A court determines materiality from the substantive law governing the claim. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Disputes over facts that might affect the outcome of the lawsuit according to applicable substantive law are material. See id. A material fact dispute is "genuine" if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party. See id. at 248–49, 106 S.Ct. at 2510–11. The Court reviews the present motions with these standards in mind.

### A. Soo Line Railroad Company's Motion for Summary Judgment

Defendant Soo Line moves for summary judgment on three issues. First, Soo Line

---

**2.** Subsequent to the Court hearing oral arguments on the present motions, the parties voluntarily stipulated to, and the Court ordered, the dismissal of this cross-claim with prejudice. *Ser-*

*vais v. T.J. Management of Minneapolis. Inc.*, No. 97–406, —— F.Supp —— (D.Minn. Apr. 21, 1997) (order dismissing paragraph thirty-one of Soo Line's Answer, Counterclaim & Cross–Claim).

seeks an order dismissing Plaintiffs' FELA claims against it for failure to obtain adequate automobile insurance coverage for the benefit of its employees or to warn them of inadequate coverage.[3] Second, it requests an order declaring that it is entitled to indemnification under the Transportation Agreement. Third, Soo Line seeks an order declaring that it is entitled to defense and indemnification under the Insurance Policy.

### 1. Plaintiffs' FELA Claims for Adequate Automobile Insurance

The operation of the Federal Employers' Liability Act is "an avowed departure from the rules of the common law...." *Sinkler v. Missouri Pac. R.R. Co.*, 356 U.S. 326, 329, 78 S.Ct. 758, 762, 2 L.Ed.2d 799 (1958); *see also Jamison v. Encarnacion*, 281 U.S. 635, 639, 50 S.Ct. 440, 442, 74 L.Ed. 1082 (1930) (contrasting components of the FELA with common law negligence). The Supreme Court summarized the purpose of the Act in the following way:

> This statute ... was a response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety. The cost of human injury, an inescapable expense of railroading, must be borne by someone, and the FELA seeks to adjust that expense equitably between the worker and the carrier.

*Sinkler v. Missouri Pac. R.R. Co.*, 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799, (1958) (citations omitted).

■ Despite its liberal remedial scope, the FELA "does not make the railroad an absolute insurer against personal injury damages suffered by its employees," but instead, "imposes liability only for negligent injuries." *Wilkerson v. McCarthy*, 336 U.S. 53, 61, 69

S.Ct. 413, 417, 93 L.Ed. 497 (1949) (citing *Coray v. Southern Pac. Co.*, 335 U.S. 520, 69 S.Ct. 275, 93 L.Ed. 208 (1949)). Specifically, section one of the FELA states that a railroad is liable for "injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. § 51. The Act, however, does not define negligence. Instead, "[w]hat constitutes negligence for the statute's purposes is a federal question, not varying in accordance with the differing conceptions of negligence applicable under state and local laws for other purposes." *Urie v. Thompson*, 337 U.S. 163, 174, 69 S.Ct. 1018, 1027, 93 L.Ed. 1282 (1949).

■ Against this backdrop, Soo Line seeks dismissal of Plaintiffs' claim for FELA negligence for failing to protect them by obtaining adequate underinsured motorist insurance ("UIM coverage") on its vehicles or for failing to warn them of insufficient coverage. (*See* Am. Compl. ¶¶ 32–33.) Plaintiffs argue that because of the Act's liberal remedial scope it should include a requirement that a railroad obtain adequate levels of UIM coverage for the benefit of its employees or, at a minimum, that a railroad warn its employees of inadequate coverage. The Court finds this proposition fraught with problems. In essence, Plaintiffs seek to create a duty by the breach of it. Nowhere in the Act has a duty been identified that requires railroads to obtain adequate automobile insurance or to make disclosures concerning it. Instead, Soo Line had a state statutory duty to comply with the insurance coverage requirements of the State of Minnesota, which it undisputedly did in this case. (*See* Mem.

---

3. Soo Line also seeks summary judgment on an additional, perceived allegation of FELA negligence. Specifically, Soo Line construes the allegations in paragraph twenty-eight of the Amended Compliant to present FELA negligence claims based on Soo Line's crew-shift scheduling, which placed Plaintiffs on the public highways at night when it is more likely that intoxicated drivers are on the road, thereby increasing the probability that they would be victims of automobile accidents involving drunk drivers. (*See* Soo Line's

Mem. Supp. Mot. Summ. J. at 9–11.) Plaintiffs, however, concede that these allegations are not intended to state a separate claim or cause of action for FELA negligence, but are alleged as relevant risk factors to substantiate their FELA claims based on inadequate insurance coverage. (*See* Pls.' Mem. Opp'n to Defs.' Mots. Summ. J. at 33–34.) Accordingly, the Court does not address this aspect of Soo Line's motion since it is not a separate claim asserted against Soo Line.

Supp. Defs. Hyland & Patraw's Mot. Partial Summ. J. at 14–15.) Nonetheless, Plaintiffs argue that another legal duty exists, arising from the broad mandates of the FELA, which has been heretofore unrecognized in law. Specifically, Plaintiffs contend that the duty to provide "adequate" UIM coverage flows from Soo Line's knowledge of the risks that its employees would be involved in automobile accidents and that their injuries might go uncompensated. The Court rejects this notion for a number of reasons.

First, the FELA does not impose a duty on railroads regarding automobile insurance coverage. Plaintiffs have failed to provide a convincing basis for their theory from either the text of the statute or from the body of case law interpreting it. The plain language of the Act distinctly obligates a railroad to exercise a specific standard of care with respect to its employees and to compensate those who are physically injured in the course of their work when that standard is not satisfied. *See* 45 U.S.C. § 51 (creating liability for "injury or death resulting in whole or in part from ... negligence...."). The FELA, however, "does not make the railroad an absolute insurer against personal injury damages suffered by its employees.... [T]he Act imposes liability only for negligent injuries." *See Wilkerson,* 336 U.S. at 61, 69 S.Ct. at 417. Moreover, although case law interpreting the FELA contemplates a broader view of negligence than at common law, the duties it imposes upon railroads remain firmly tethered to the notion of protecting employees from work-related injuries. *See, e.g., Sinkler,* 356 U.S. at 326, 78 S.Ct. at 760 (finding railroad liable under the FELA for physical injuries caused by negligent acts of persons "performing, under contract, operational activities of" the railroad); *Rogers v. Missouri Pac. R. Co.,* 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (reversing state supreme court's reversal of jury verdict for petitioner for physical injuries sustained while in the course of his employment with railroad); *Urie,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (finding occupational disease, silicosis, to be an "injury" within the scope of the FELA); *Wilkerson,* 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497 (1949) (reversing state supreme court's affirmance of directed ver-

dict for railroad in suit involving physical injury to petitioner arising in course of his employment); *Jamison,* 281 U.S. at 635, 50 S.Ct. at 441 (finding assault by foreman resulting in employee's physical injuries to be compensable under the FELA).

These observations cut against recognition of Plaintiffs' proffered duty. Obligating railroads to obtain specific levels of UIM coverage has no nexus to protecting employees from injury. Stated another way, the presence or absence of automobile insurance has no bearing on lessening the likelihood that employees will be involved in automobile accidents. Furthermore, Plaintiffs' theory would create a FELA cause of action requiring a railroad to compensate an employee without regard to fault. This proposition runs counter to the negligence principles that have developed under the FELA. *See Wilkerson,* 336 U.S. at 66, 69 S.Ct. at 419-20 ("But so long as negligence rather than workmen's compensation is the basis of recovery, just so long will suits under the Federal Employers' Liability Act lead to conflicting opinions about 'fault' and 'proximate cause.' The law reports are full of unedifying proof of these conflicting views, and that too by judges who seek conscientiously to perform their duty by neither leaving everything to a jury nor, on the other hand, turning the Federal Employers' Liability Act into a workmen's compensation law.") (Frankfurter, J. concurring); *see also Chapman v. Union Pac. R.R.,* 237 Neb. 617, 467 N.W.2d 388, 393 (1991) (finding no duty under the FELA to provide uninsured or underinsured motorist insurance); *Lewis v. Norfolk & W. R.R. Co.,* 269 Ill.App.3d 483, 207 Ill.Dec. 291, 294, 646 N.E.2d 1378, 1381 (1995) (same); *Dawson v. Elgin, Joliet & E. R.R. Co.,* 266 Ill.App.3d 329, 203 Ill.Dec. 741, 742, 640 N.E.2d 661, 663-64 (1994) (same). Accordingly, the Court finds that the FELA does not impose a duty upon railroads to obtain adequate underinsured motorist insurance coverage or to warn employees about such coverage levels.

■ Second, even if the Court assumed a duty to obtain adequate UIM coverage or to warn employees about inadequate coverage, Plaintiffs' allegations cannot establish the

necessary causal link between the breach of duty and their alleged injuries in order to state a claim for FELA negligence. "A railroad's liability under [section one] of the FELA is to compensate its employees in damages for injuries *resulting in whole or in part from the fault* of 'any of the officers, agents, or employees' of such carrier." *Sinkler*, 356 U.S. at 328, 78 S.Ct. at 761 (emphasis added); *see also Bissett v. Burlington N. R.R. Co.*, 969 F.2d 727, 731 (8th Cir.1992) ("The plaintiff need only prove that employer negligence played any part, even the slightest, in producing the injury . . . for which damages are sought.") (citations and quotations omitted). Plaintiffs' injuries—pain, suffering, and permanent disability—were caused by the automobile accident, not the presence or absence of insurance. *See Chapman*, 467 N.W.2d at 394; *Lewis*, 207 Ill.Dec. at 293–94, 646 N.E.2d at 1380–81; *Dawson*, 203 Ill.Dec. at 744, 640 N.E.2d at 664. Even if the Court construes the allegations to assert a negligence claim for economic injury, that too must fail. The expenses incurred by Plaintiffs flowed from the accident not the level of UIM coverage carried by Soo Line. Therefore, the Court finds that Plaintiffs cannot prove the causation element necessary to state a claim for FELA negligence.

Third, creation of Plaintiffs' proposed claim necessitates legislative, not judicial, action. The imposition of an "adequate insurance" duty on railroads would be a marked change in the obligations imposed upon railroads under the FELA. As discussed above, the Court finds that this duty does not exist in the Act as presently interpreted by courts. It is not within the province of the judiciary to "legislate" a new cause of action that runs counter to the Act's presently existing statutory strategy. In reality, Plaintiffs' proffered duty is more akin to a no-fault remedial scheme. It is for Congress to decide whether the FELA should be modified to mandate no-fault recovery. For all these reasons, the Court concludes as a matter of law that the FELA does not impose a duty on railroads to maintain sufficient underinsured motorist insurance to compensate employees for injuries suffered as a result of automobile accidents occurring while being transported in the course of their employment. Moreover, the Court determines as a matter of law that the FELA does not impose a duty on railroads to warn employees about the levels of such insurance coverage. Accordingly, the Court grants summary judgment as to these claims and dismisses them with prejudice.

### 2. Soo Line's Indemnification Cross-Claim under the Transportation Agreement

■ Both Defendant Soo Line and the G & R Defendants make cross motions for summary judgment on the issue of Soo Line's right to indemnification under the terms of the Transportation Agreement. Minnesota law dictates that, absent an ambiguity, the meaning and effect of a contract presents a question of law. *See LaSociete Generale Immobiliere v. Minneapolis Community Dev. Agency*, 44 F.3d 629, 635–36 (8th Cir.1994) (citing *Trondson v. Janikula*, 458 N.W.2d 679, 681 (Minn.1990), *cert. denied*, —— U.S. ——, 116 S.Ct. 58, 133 L.Ed.2d 22 (1995)). Unambiguous contract terms must be given their plain and ordinary meaning. *See Litton Microwave Cooking Prods. v. Leviton Mfg. Co.*, 15 F.3d 790, 796 (8th Cir.1994) (citing *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310–11 (Minn.1989)). When determining the meaning of a contract, Minnesota courts "must construe the contract as a whole and attempt to harmonize all clauses of the contract." *LaSociete*, 44 F.3d at 636 (citing *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 525 (Minn.1990)).

The parties agree that the following language in the Transportation Agreement is relevant to determining whether Soo Line is entitled to indemnification for Plaintiffs' claims:

10. Company [G & R] indemnifies and holds CTS and Railroad harmless from any liabilities, charges or attorney fees resulting from injury to or death of any of Railroad's employees injured while utilizing the services of Company. . . .

(Transportation Agreement ¶ 10, Reisbord Aff. Ex. B). Soo Line argues that this provision obligates Hyland and G & R to indemnify Soo Line for all claims made against it by employees injured while utilizing the taxicab company's services. In particular, Soo Line

contends that it has a contractual right to complete indemnification since all of its potential liability flows from the G & R Defendants' allegedly negligent conduct. (*See* Soo Line's Mem. Supp. Mot. Summ. J. at 11–12; Soo Line's Mem. In Response to G & R/Hyland's Mot. Partial Summ. J. at 4). On the other hand, the G & R Defendants contend that the indemnification provision obligates Hyland and G & R to indemnify Soo Line only for the G & R Defendants' own negligence, not for the conduct of other parties. (*See* Hyland & Patraw's Reply Mem. at 8). Specifically, the G & R Defendants maintain that Hyland and G & R are not obligated to indemnify Soo Line for any FELA liability springing from Soo Line's own negligent conduct or that of Nichole and Randy Helms, which may be imputed to Soo Line under the FELA.

■ A close examination of the parties' positions reveals that the difference between them, to a large extent, turns on their respective perspectives on the potential liability at issue in this case. Both parties concede that the Transportation Agreement obligates Hyland and G & R to indemnify Soo Line for the G & R Defendants' negligence. Soo Line, however, argues that all of its potential FELA liability stems from the G & R Defendants' conduct and, therefore, is subject to indemnification. The Court does not agree. A railroad's FELA duties are broader than the duties of a common carrier. Here, Plaintiffs' Amended Complaint contains FELA claims against Soo Line that are separate and distinct from the claims against the G & R Defendants. In particular, Plaintiffs allege that the G & R Defendants owed them the duty of a common carrier and that they were injured as a result of a breach of this duty. (See Am. Compl. ¶ 1 14–16). In addition, Plaintiffs allege that Soo Line owed them a duty to provide a reasonably safe work place pursuant to the FELA. (*See* Am. Compl. ¶ 30). They further allege, for instance, that Soo Line acted negligently by failing to adopt and implement a safe method and procedure for transporting Plaintiffs. (*See id.*). It is apparent from these allegations that the total potential FELA liability Soo Line faces is greater in scope than the FELA liability attributable to Soo Line from

the G & R Defendants' alleged breach of duty as a common carrier. To the extent that this alleged breach of duty gives rise to liability imputed to Soo Line under the FELA, Hyland and G & R are contractually obligated to indemnify Soo Line. However, as discussed more fully below, the Transportation Agreement does not obligate Hyland and G & R to indemnify Soo Line for any FELA liability beyond that point. The reason, in short, is that the indemnity provision does not entitle Soo Line to indemnification for FELA claims arising out of Soo Line's own negligence or the negligence of other parties that may be attributed to Soo Line under the Act.

■ Under Minnesota law, agreements that seek to indemnify a party for its own negligence are not favored. *See National Hydro Sys. v. M.A. Mortenson Co.,* 529 N.W.2d 690, 694 (Minn.1995). "There must be an express provision in the contract to indemnify the indemnitee for liability occasioned by its own negligence; such an obligation will not be found by implication." *Farmington Plumbing & Heating Co. v. Fischer Sand & Aggregate, Inc.,* 281 N.W.2d 838, 842 (Minn.1979). A provision is "not construed in favor of indemnification 'unless such intention is expressed in clear and unequivocal terms, or unless no other meaning can be ascribed to it.'" *National Hydro,* 529 N.W.2d at 694 (quoting *Braegelmann v. Horizon Dev. Co.,* 371 N.W.2d 644, 646 (Minn. Ct.App.1985)); *see also Johnson v. McGough Constr. Co.,* 294 N.W.2d 286, 288 (Minn.1980) (holding indemnity provision clearly and unequivocally stated intent that indemnitor be liable for indemnitee's negligence despite no specific reference to "negligence"). "Moreover, additional limiting language may render an otherwise clear and unequivocal provision equivocal, thus precluding indemnity." *Id.* Thus, the Court's task here is to determine whether the Transportation Agreement contains "specific language expressing an intent to indemnify the indemnitee for claims arising out of its own negligence." *Id.*

In *National Hydro Systems v. M.A. Mortenson Co.,* the Minnesota Supreme Court recently applied this "strict construction" rule to a general construction contract that

allegedly obligated the defendant general contractor to indemnify co-defendant HDR Engineering, Inc. ("HDR"), a design engineering company, for HDR's own negligence. 529 N.W.2d at 292. The court analyzed the indemnity clause in the contract, stating the following:

> Although the first clause of Article 15 may indeed be broad enough to incorporate claims of negligence, the provision contains an additional clause limiting the breadth of the obligation: "which arise out of or result from performance of the WORK by CONTRACTOR ..." This additional clause puts the scope of indemnity in question, rendering the provision equivocal.

*Id.* at 294. Consequently, the court concluded that HDR was not entitled to indemnification for its own negligence. *Id.*

Similarly, the contract at issue here does not expressly require Hyland and G & R to indemnify Soo Line for Soo Line's own negligent acts nor is such indemnity necessarily within its scope. While the phrase "indemnifies and holds ... harmless" conceivably expresses the intent that Hyland and G & R will reimburse Soo Line for its own negligence, the clause does not end there. Instead, it continues on to state that Hyland and G & R's obligation to indemnify Soo Line exists for "any liabilities ... resulting from injury ... to employees injured *while utilizing the services of [G & R] ....*" (Transportation Agreement ¶ 10, Reisbord Aff. Ex. B) (emphasis added.) The "while utilizing" language limits the breadth of the obligation in a way that puts the scope of the indemnity in question. *See National Hydro,* 529 N.W.2d at 694. Specifically, the language confines the indemnity obligation to injuries resulting from services provided by the taxicab company, i.e., "the services of [G & R]." In other words, the Transportation Agreement limits Hyland and G & R's obligation to indemnify Soo Line to injuries resulting from the G & R Defendants' own actions. *See id.* If the parties had intended that Hyland and G & R indemnify Soo Line for Soo Line's own negligent conduct, then they could have drafted language that clearly and unequivocally accomplished that result. They did not do that here. Instead, the Court finds that the Transportation Agreement obligates Hyland and G & R to indemnify Soo Line only for that liability directly arising from the G & R Defendants' breach of duty as a common carrier. Accordingly, the Court denies Soo Line's motion and grants the G & R Defendants' motion for summary judgment with respect to this issue.

### 3. Soo Line's Defense and Indemnification Cross–Claim under the Insurance Policy

The third issue raised in Soo Line's motion relates to the Insurance Policy obtained from U.S. Fire. Soo Line moves for summary judgment on its cross-claim alleging that U.S. Fire owes Soo Line the duty of defense and indemnification pursuant to the terms of the Insurance Policy. (*See* Answer, Counterel. & Cross-cl. of Soo Line R.R. Co. ¶ 32). At the same time, U.S. Fire also moves for summary judgment on Soo Line's cross-claim, arguing that U.S. Fire is not obligated to defend and indemnify Soo Line since it is not covered under the policy. The Court analyzes the Insurance Policy utilizing the rules of contract construction outlined above. *See LaSociete,* 44 F.3d at 636 (holding courts "must construe the contract as a whole and attempt to harmonize all clauses of the contract."); *Litton Microwave,* 15 F.3d at 796 (stating unambiguous contract terms must be given their plain and ordinary meaning). In pertinent part, the policy states:

> The Insurance Policy provides liability coverage under the following terms: [U.S. Fire] will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto."
>
> [U.S. Fire has] the right and duty to defend any "suit" asking for these damages. However, we have no duty to defend "suits" for "bodily injury" or "property damage" not covered by this Coverage Form.

(Insurance Policy, Business Auto Coverage Form at 2, Reisbord Aff. Ex. C.) The policy names G & R as the only insured. (*See id.,* Business Auto Declarations at 1.) Reading the contract as a whole, the scope of cover-

age under the policy extends U.S. Fire's obligations to "insureds." Soo Line, by its own admission, is not an insured under the agreement. (*See* Soo Line's Mem. Supp. Mot. Summ. J. at 21 n. 1) ("Soo Line was not a named insured under this policy, and does not meet the definition of 'insured.'" Soo Line is not seeking by this motion to be made a named insured under the policy."). Therefore, unless another provision in the Insurance Policy expands the scope of the policy coverage, Soo Line has no right to defense and indemnification from U.S. Fire.

■ Soo Line argues that such a provision does exist. Specifically, Soo Line points to a section of the policy that provides a specific exclusion for liability assumed in a contract, to which an exception exists for liability assumed in an "insured contract." (*See* Insurance Policy, Business Auto Coverage Form at 3, Reisbord Aff. Ex. C.) An "insured contract" is defined as "[t]hat part of any other contract or agreement pertaining to your business under which you assume the tort liability of another to pay damages because of 'bodily injury' or 'property damage' to a third person or organization...." (*Id.* at 8). The Transportation Agreement arguably falls within this definition. The Court, however, need not decide that issue. Instead, Soo Line's argument faces a more fundamental problem. Specifically, this exception to an exclusion of liability coverage does not by itself provide coverage. *See Harco Nat'l Ins. Co. v. Bobac Trucking, Inc.*, No. C 93–101295 CW, 1995 WL 482330, at *8 (N.D.Cal. Aug.4, 1995), aff'd, 107 F.3d 733 (9th Cir.1997). Here, the scope of the Insurance Policy's liability coverage extends to insureds. By its own admission, Soo Line is not an insured under the policy. Soo Line's focus on the application of the "insured contract" exception to the exclusion to liability coverage is misplaced. *See id.* ("A basis for coverage must first be found before the applicability of an exclusion becomes relevant."). Therefore, the Court determines that U.S. Fire has no duty to defend or indemnify Soo Line under the terms of the Insurance Policy. Accordingly, the Court denies Soo Line's motion and grants U.S. Fire's motion for summary judgment on this issue.

**B. United States Fire Insurance Company's Motion for Summary Judgment**

Defendant U.S. Fire, moves for summary judgment on an additional issue. Specifically, U.S. Fire seeks dismissal of Plaintiffs' breach-of-contract claims in Count Five, which alleges that U.S. Fire refused to tender $70,000 in underinsured motorist coverage. (*See* Am. Compl. ¶¶ 21–25). In order to survive a motion for summary judgment, a non-moving party must demonstrate that there is a genuine issue of material fact with respect to the matter in question. *See* Fed. R.Civ.P. 56(c); *Celotex Corp.*, 477 U.S. at 317, 106 S.Ct. at 2549–50; *Unigroup, Inc.*, 980 F.2d at 1219–20.

■ In the Amended Complaint, Plaintiffs state that U.S. Fire "has wholly breached and refused to honor its contractual obligations under said insurance policy and its statutory obligations ... [and] that [U.S. Fire] has wrongfully refused to pay the underinsured vehicle benefits which it is required to pay under said policy and said statutes...." (*See id.* ¶ 25.) However, in their Memorandum in Opposition to Defendants' Motions, Plaintiffs admit that "these $70,000 UIM limits have been tendered by" U.S. Fire, but that Plaintiffs have refused to accept tender of the coverage limits. (*See* Pfs.' Mem. Opp'n Defs.' Mots. Summ. J. at 4 n. 1.) The reason given by Plaintiffs for their decision is their concern about the "risk that defendants may assert that plaintiffs are therefore estopped from making these claims. If *all* defendants agree that plaintiffs can accept this tender without prejudice to *any* of their claims, plaintiffs will be happy to accept tender." (*See id.*) (emphasis in original). Plaintiffs' admission that U.S. Fire has tendered payment completely contradicts their allegations that U.S. Fire breached its contract by "wrongfully refus[ing] to pay." Plaintiffs' decision not to accept the tendered payment for tactical reasons related to this litigation does not constitute a breach of contract by U.S. Fire. Consequently, the Court grants U.S. Fire's motion for summary judgment and dismisses Count Five of the Amended Complaint with prejudice.

## C. The G & R Defendant's Motion for Partial Summary Judgment

Finally, the G & R Defendants move for summary judgment on multiple issues.[4] First, the motion seeks dismissal of G & R Transportation, Inc. as a party to this action since its incorporation post-dates the contracts and the accident at issue. Second, the movants seek dismissal of Plaintiffs' negligent equipment claims. (*See* Am. Compl. ¶¶ 14–16.)[5] Third, the motion requests dismissal of Plaintiffs' breach-of-contract claims in Count Four since the movants procured the insurance called for under the contract with CTS. (*See* Am. Compl. ¶¶ 17–20.) Four, the G & R Defendants move the Court to declare that, in the event they are found liable for Plaintiffs' damages, liability shall be apportioned in accordance with Minnesota Statutes section 604.02, which addresses apportionment of damages in joint liability situations.

### 1. *Proper Party*

In their motion papers, Defendants claim that G & R Transportation, Inc. should be dismissed from the instant suit since it did not exist prior to the date of the accident. (*See* Mem. Supp. Defs.' Hyland & Patraw's Mot. Partial Summ. J. at 10.) While Plaintiffs do not oppose Defendants' motion, Soo Line does oppose the dismissal of G & R Transportation, Inc. as a party to this suit. Specifically, Soo Line argues that a material factual issue exists regarding the potential liability of G & R Transportation, Inc. as a successor in interest to G & R Transportation, Hyland's unincorporated sole proprietorship. (*See* Soo Line's Mem. Resp. to G & R/Hyland's Mot. Partial Summ. J. at 3.) Minnesota law provides four circumstances under which a successor corporation may be liable as a successor in interest. *See Niccum*

*v. Hydra Tool Corp.*, 438 N.W.2d 96, 98 (Minn.1989). As applied to this case, G & R Transportation, Inc. could be liable if it purchased or otherwise received all of G & R Transportation's assets and: (1) expressly or impliedly agreed to assume G & R Transportation's debts; (2) the transaction amounted to a merger or consolidation of the two companies; (3) G & R Transportation, Inc. is a mere continuation of G & R Transportation; or (4) the transaction was entered into fraudulently to escape liability for G & R Transportation's debts. *See id.*

Defendants have not provided any evidence in support of their motion to dismiss the corporate defendant beyond the observation that G & R Transportation, Inc. did not exist at the time of the accident. At his deposition, Hyland stated that he incorporated the taxicab business, but that he had not "used it yet though" and that "it's not doing anything." (*See* Hyland Dep. at 33–34.) In an attempt to explain his answer, Hyland further stated that he is still "basically" operating the business as a sole proprietorship. (*See id.* at 33.) However, he also stated that he is presently employed by "the corporation known as G & R Transportation Company." (*See id.*) In addition, when asked whether he knew why he was not operating as a corporation yet, Hyland responded, "Oh, there is a few things I got to get straightened out yet." (*See id.* at 34.) Upon the advice of counsel, Hyland never elaborated on this answer. These confusing, cryptic, and contradictory statements raise a material issue of fact as to the relationship between G & R Transportation and G & R Transportation, Inc. In particular, it raises a question about the potential liability of G & R Transportation, Inc. as a successor in interest to G & R Transportation. Therefore, the Court

---

4. In their motion, the G & R Defendants also sought dismissal of Soo Line's breach-of-contract cross-claim, (*see* Answer, Countercl. & Cross-cl. of Soo Line R.R. Co. ¶ 31), alleging that the movants failed to have Soo Line named as an additional insured on the Insurance Policy provided by U.S. Fire. As discussed above, the Court has ordered that this cross-claim be dismissed with prejudice, pursuant to a voluntary stipulation by all parties. *See supra* note 2.

5. Plaintiffs do not oppose the dismissal of their negligent equipment claims. Plaintiffs assert that they offer no opposition because Plaintiffs' treating physicians have been unable to determine what additional damages were suffered as a result of the alleged lack of seat belts. (*See* Pls.'s Mem. Opp'n Defs.' Mots. Summ. J. at 2 n. 2). Accordingly, the Court grants the G & R Defendants' motion for summary judgment and dismisses with prejudice Plaintiffs' negligent equipment claims found in Count Three. (*See* Am. Compl. ¶¶ 14–16.)

denies the G & R Defendants' motion to dismiss G & R Transportation, Inc. as a party to this action.

### 2. *Plaintiffs' Breach of Contract Claims*

Defendants also move for dismissal of Plaintiffs' breach-of-contract claims. In Count Four of the Amended Complaint, Plaintiffs allege that they are entitled to the benefit of $1,500,000 in UIM coverage under two alternative theories of recovery. (*See* Am. Compl. ¶¶ 17–20.) Specifically, Plaintiffs claim that they are third-party beneficiaries to the Transportation Agreement, (*see id.* ¶ 18), and that they are entitled to recover under an implied contract-in-law theory, (*see id.* ¶ 19). Plaintiffs base their claims on allegations that Defendants Hyland and G & R represented to Plaintiffs that the taxicabs were insured "to provide $1,500,000 in accident insurance to cover passengers for all losses, regardless of fault, in the event of an accident...." (*See id.* ¶¶ 18, 19.)

 Under Minnesota law, a third-party may recover as an intended beneficiary to a contract "if recognition of third-party beneficiary rights is 'appropriate' and either the duty owed or the intent to benefit test is met...." *Cretex Cos. v. Construction Leaders. Inc.*, 342 N.W.2d 135, 139 (Minn.1984) (adopting Restatement (Second) of Contracts § 302 (1979)). The starting point for the analysis is the contract itself. *See id.; Buchman Plumbing Co. v. Regents of the Univ. of Minnesota*, 298 Minn. 328, 215 N.W.2d 479, 483–84 (1974); *Brix v. General Accident & Assurance Corp.*, 254 Minn. 21, 93 N.W.2d 542, 544 (1958). The Supreme Court of Minnesota has aptly stated:

> It would seem elementary ... that any third party bringing this type of action on [a] contract must be limited strictly to the terms and promises made in the contract involved. His rights depend upon, and are measured by, the terms of the contract.

*Brix*, 93 N.W.2d at 544. Here, Plaintiffs base their third-party beneficiary claims on the Transportation Agreement. (*See* Am. Compl. ¶ 18.) The express terms of that contract, however, do not support Plaintiffs' claims. Pursuant to the Transportation Agreement, Hyland and G & R agreed to:

> obtain and keep in force at all times during the existence of this agreement, a automobile liability policy or policies of insurance *providing the minimum amount of insurance required by law* to perform transportation services in the states in which [G & R] operates. [G & R] agrees to provide insurance with a minimum amount of $1,500,000 blanket liability coverage....

(*See* Transportation Agreement ¶ 4, Reisbord Aff. Ex. B.) It is indisputable that Hyland and G & R obtained automobile insurance coverage that fully complied with these requirements. The Insurance Policy provided by U.S. Fire contained both a blanket liability coverage of $1,500,000 and coverage limits that fully complied with Minnesota law. Indeed, Hyland and G & R obtained UIM coverage that exceeded the statutory requirements of the State of Minnesota. *See* Minn.Stat. § 65B.49, subd. 3a. Thus, while Plaintiffs may be the intended beneficiaries of the Transportation Agreement, the terms of that contract do not entitle them to $1,500,000 in UIM coverage.

 Likewise, Plaintiffs' implied-contract-in-law claims fail as well. This equitable doctrine, which is more commonly referred to in Minnesota as promissory estoppel, implies "a contract in law where none exists in fact." *Grouse v. Group Health Plan, Inc.*, 306 N.W.2d 114, 116 (Minn.1981). The doctrine of promissory estoppel has three elements: (1) there must be a "clear and definite promise"; (2) the promisor must intend to induce the promisee's reliance, and such reliance must occur; and (3) the promise must be enforced to prevent an injustice. *See Ruud v. Great Plains Supply, Inc.*, 526 N.W.2d 369, 372 (Minn.1995) (citing *Cohen v. Cowles Media Co.*, 479 N.W.2d 387, 391 (Minn.1992)). Under these standards, Plaintiffs' allegations are insufficient as a matter of law.

In the first place, the suspect representation that forms the basis of the promissory estoppel claim does not satisfy the first element, that the statement be a clear and definite promise. Plaintiffs hinge their entire claim on a single representation printed

on G & R's business card. (*See* Pls.' Mem. Opp'n Defs.' Mots. Summ. J. at 31–33.) Along with other statements, the business card bore the phrase: "Insured to $1,500,-000." As a matter of law, this statement is not a "clear and definite promise" for the purposes of supporting a claim for promissory estoppel. *See Ruud*, 526 N.W.2d at 372 (reinstating summary judgment for defendant, in part, based on holding that the phrase "good employees are taken care of" was not a clear and definite promise). This language does not indicate that a promise had been made. At most, it is a statement of fact "merely imparting information." *United Shippers Coop. v. Soukup*, 459 N.W.2d 343, 346 (Minn.Ct.App.1990) (affirming summary judgment for defendant bank on promissory estoppel claim; holding "This is to inform you that we have set up an operating credit line to finance the above purchases" was not a clear and definite promise but an impartation of information).

More importantly, even if the wording on the business card did constitute a clear and definite promise, Plaintiffs' promissory estoppel claim does not satisfy the third element, that injustice can be avoided only by enforcing the alleged promise. Resolution of this element is a question of law for the courts. *See Cohen*, 479 N.W.2d at 391; *accord Faimon v. Winona State Univ.*, 540 N.W.2d 879, 883 (Minn.Ct.App.1995). The Minnesota Supreme Court has provided further guidance for making this determination by stating: "It is perhaps worth noting that the test is not whether the promise should be enforced to do justice, but whether enforcement is required to prevent an injustice." *Cohen*, 479 N.W.2d at 391. A determination of injustice turns on numerous considerations, including "the reasonableness of a promisee's reliance and a weighing of public policies in favor of both enforcing bargains and preventing unjust enrichment." *Faimon*, 540 N.W.2d at 883; *see also id.* at 883 n. 2 (listing considerations from Restatement (Second) of Contracts § 90.1 cmt. b (1981)). Here, it is simply unreasonable to hold Hyland and G & R culpable to the extent prayed for based on a three-word statement embossed on a business card. In other words, the remedy sought by Plaintiffs—$1,500,000 in UIM cov-

erage—is exceedingly disproportionate to the reasonableness of Plaintiffs' purported reliance on a statement that was so informally communicated and of such an indefinite nature. Moreover, Plaintiffs are not left without automobile insurance protection altogether. It is undisputed that the UIM coverage provided under the Insurance Policy exceeded state statutory requirements. Finally, the circumstances of this case lack the public policy considerations, such as the enforcement of bargains or the prevention of unjust enrichment, that would compel extraordinary judicial intervention to avoid injustice. In short, the Court finds that Plaintiffs have failed to state a claim for breach of contract as third-party beneficiaries or under the theory of promissory estoppel. Therefore, the Court grants the G & R Defendants' motion for summary judgment and dismisses Count Four with prejudice.

### 3. Apportionment of Damages

Finally, the G & R Defendants argue that the state apportionment statute, Minnesota Statutes section 604.02, applies to this case. In particular, the movants seek an order declaring that if the fault attributable to them is less than fifteen percent, then the apportionment statute limits their total liability to four times that percentage. (*See* Mem. Supp. Defs. Hyland & Patraw's Mot. Partial Summ. J. at 22–23) (citing Minn.Stat. § 604.02, subd. 1). Soo Line, however, opposes the motion arguing that the apportionment statute does not apply here because the movants are contractual indemnitors of Soo Line's FELA liability pursuant to the Transportation Agreement. The Court determines that the G & R Defendants have brought this motion prematurely. Accordingly, the Court declines the invitation to decide the issue of apportionment of damages until a finding of fault has been made. Consequently, the Court denies the motion with leave to renew it upon an adjudication of fault in this matter.

### CONCLUSION

Plaintiffs' FELA claims that are based on Soo Line's failure to obtain adequate automobile insurance coverage or to warn employees of inadequate coverage fail as a matter of law. The Court finds that no such duties

exist under the Act. The Court also determines that, pursuant to the terms of the Transportation Agreement, Hyland and G & R are obligated to indemnify Soo Line only for that liability arising directly from the G & R Defendants' breach of duty as a common carrier. Moreover, Soo Line is not entitled to defense and indemnification from U.S. Fire since Soo Line is not an insured under the Insurance Policy. In addition, the Court grants U.S. Fire's motion to dismiss Plaintiffs' breach-of-contract claims against U.S. Fire as it is undisputed that U.S. Fire tendered to Plaintiffs the amount specified by the Insurance Policy but that Plaintiffs refused tender. The Court also grants the G & R Defendants' motion for summary judgment on Plaintiffs' breach-of-contract claims alleging entitlement to $1,500,000 in underinsured motorist coverage. Specifically, while Plaintiffs may be third-party beneficiaries to the Insurance Policy, the policy does not provide the coverage sought by Plaintiffs. Furthermore, Plaintiffs' promissory estoppel theory fails since the suspect phrase on the taxicab company's business card did not convey a clear and definite promise and, even if it did, enforcement of the alleged promise would not be required to avoid injustice. Finally, the Court denies the G & R Defendants' motion to dismiss G & R Transportation, Inc. as a party to this suit and to obtain an order declaring that the state apportionment statute applies to this action. The Court determines that, respectively, a material issue of fact exists regarding G & R Transportation, Inc.'s status as a successor in interest to G & R Transportation and any decision regarding apportionment of damages would be premature at this stage of the litigation.

Accordingly, **IT IS HEREBY ORDERED** THAT:

1. Defendant Soo Line Railroad Company's Motion for Summary Judgment (Clerk Doc. No. 85) is GRANTED IN PART AND DENIED IN PART;

2. Defendant Ronald Hyland, individually and doing business as G & R Transportation, Inc., and Defendant Leonard Patraw's Motion for Partial Summary Judgment (Clerk Doc. No. 94) is GRANTED IN PART AND DENIED IN PART. The portion of this motion seeking an order declaring that the Minnesota apportionment of damages statute, Minnesota Statutes section 604.02, applies to these proceedings is DENIED WITH LEAVE TO RENEW the motion upon adjudication of fault;

3. Defendant United States Fire Insurance Company's Motion for Summary Judgment (Clerk Doc. No. 100) is GRANTED;

4. Plaintiffs' claims against Defendant Soo Line Railroad Company alleging a violation of the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60, for failure to provide adequate underinsured motorist insurance coverage and/or to warn employees of such coverage levels, contained in paragraphs 32 and 33 of Count Six of the Amended Complaint (Clerk Doc. No. 2), are DISMISSED WITH PREJUDICE;

5. Pursuant to the terms of the Transportation Agreement, Defendants Ronald Hyland and G & R Transportation, Inc. shall indemnify Defendant Soo Line Railroad Company only for that liability, FELA and other, arising directly from the G & R Defendants' breach of duty as a common carrier.

6. Plaintiffs' claims of negligent equipment against the G & R Defendants in Count Three of the Amended Complaint (Clerk Doc. No. 2) are DISMISSED WITH PREJUDICE;

7. Count Four of the Amended Complaint (Clerk Doc. No. 2) is DISMISSED WITH PREJUDICE; and

8. Count Five of the Amended Complaint (Clerk Doc. No. 2) is DISMISSED WITH PREJUDICE.