**DIVERSIFIED DYNAMICS CORPORATION, Plaintiff–Appellant,**

v.

**WAGNER SPRAY TECH CORPORATION, Defendant–Appellee.**

No. 03–1495.

United States Court of Appeals, Federal Circuit.

DECIDED: July 8, 2004.

PROST, Circuit Judge.

Diversified Dynamics Corporation ("Diversified") appeals from the June 6, 2003, grant of summary judgment to Wagner Spray Tech Corporation ("Wagner") by the United States District Court for the District of Minnesota dismissing Diversified's claims for patent infringement. *See Diversified Dynamics Corp. v. Wagner Spray Tech Corp.*, No. 03–CV–1183 (D. Minn. June 6, 2003). Because we conclude that the district court incorrectly construed the release language in a settlement agreement between the two parties, we *reverse* the district court's grant of Wagner's motion for summary judgment and its denial of Diversified's motion for a preliminary injunction on that basis, and *remand* for further proceedings.

## I

The parties are competitors in the market for paint application products and have a history of litigation between them. Particularly, in July 1999, Diversified sued Wagner for infringement of U.S. Patent No. 4,695,176 ("the '176 patent"). The asserted claims relate to a duckbill check valve to control the flow of paint from a paint reservoir contained in a paint-roller handle to the roller itself. The particular products at issue were Wagner's Paint Mate and Stain Mate rollers, which used a ball-and-spring check valve to perform the same function. Wagner counterclaimed for infringement of U.S. Patent No. 5,591,-012.

The parties entered into a Settlement Agreement on September 11, 2000, ("Settlement Agreement") wherein they agreed to dismiss their respective claims. Paragraph 5 of the Settlement Agreement contains the release and states:

> [Diversified], for itself and its agents, successors, and assigns, does hereby forever release, discharge, and promise not to sue Wagner and its present and past agents, employees, officers, directors, attorneys, successors, assigns, authorized distributors, and customers, of, from, and regarding any and all actions, claims, counterclaims, obligations, causes of action, promises, damages, costs, expenses, liabilities, and demands, known or unknown, arising out of or in any way related to the '176 Patent, or Wagner's Paint Mate® or Stain Mate® products as currently made, used, promoted or sold, and all claims that [Diversified] made or could have made in the Action related to the '176 Patent, or Wagner's Paint Mate® or Stain Mate® products.

In exchange for this release, Wagner paid Diversified $200,000, and the parties entered into a Non-Exclusive Cross-License Agreement ("Cross-License"). The Cross-License applied to the '176 patent and "any continuation, continuation-in-part, divisional, re-examination, or re-issue [thereof]."

Diversified again sued Wagner for infringement on February 25, 2003. The suit related to a different patent—U.S. Patent No. 4,810,123 ("the '123 patent")—and different products—Wagner's Paint Mate Plus, Stain Mate Plus, and Paint 'N Roll Plus. But it related to a similar alleged infringing feature, an improved design for the duckbill check valve that controls the flow of paint from the in-handle reservoir to the roller. Early in the proceedings, Diversified made a motion for a preliminary injunction and Wagner made a counter-motion for summary judgment. In addition to arguing that its products did not infringe, Wagner argued that the release in the Settlement Agreement precluded Diversified's suit.

The district court granted Wagner's motion for summary judgment, concluding that the release barred Diversified's claims under the '123 patent, and therefore denied Diversified's motion for a preliminary injunction. Applying Minnesota case law as well as dictionary definitions, the district court broadly interpreted the release language "in any way related to" to mean "connected or associated with one or another without restriction or exception." Applying this construction of the contract language to the facts, the district court concluded that "the '123 patent is related to the '176 patent." In particular, the district court found that: (1) in the prosecution file, the patentees admitted the '123 patent application is "related to" the application that matured into the '176 patent; (2) the '123 patent is referred to as a "companion" to the '176 patent in the Cross Reference section of the written description; (3) the '123 patent's "Field of

the Invention" copies verbatim the first sentence of the '176 patent's "Field of the Invention"; (4) significant portions of the '123 patent's Summary of the Invention copy the '176 patent's Summary of the Invention; (5) parts of the '123 patent's drawings, written description, and broadest claim are identical to the drawings, written description, and broadest claim of the '176 patent; and finally, (6) the '176 patent appears to be the most relevant prior art to the '123 patent. Consequently, because it found that the '123 patent was "in any way related to" the '176 patent, the district court concluded that the Settlement Agreement barred Diversified from suing Wagner for infringement of the '123 patent, and therefore granted Wagner's motion for summary judgment.

Diversified filed a timely appeal and we have jurisdiction pursuant to 38 U.S.C. § 1295(a)(1).

## II

We review a district court's grant of summary judgment de novo, drawing all factual inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1105 (Fed.Cir.2000). In addition, "[t]he interpretation of a Settlement Agreement, i.e., a contract, is a question of law that we review de novo." *Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1370 (Fed.Cir.1999) (*"Augustine"*). We apply the state's contract law in interpreting a settlement agreement. *See id.* Under Minnesota contract law, the language of the contract must be given its plain and ordinary meaning. *See, e.g., Servais v. T.J. Mgmt. of Minneapolis, Inc.*, 973 F.Supp. 885, 892 (D.Minn.1997). Moreover, to ascertain the parties' intentions, one must interpret the contract as a whole and attempt to harmonize all the contract's terms. *See id.* A court may not go beyond the contract language if that language is clear and unambiguous. *See SO Designs USA, Inc. v. Rollerblade, Inc.*, 620 N.W.2d 48, 52 (Minn.Ct.App.2001).

On appeal, Diversified argues that the release language is unambiguous and narrow and does not preclude its suit on the '123 patent. Reciting the claim language, Diversified notes that the Settlement Agreement releases only *actions* "arising out of or in any way related to the '176 patent." Because this *action* relates to the '123 patent and is not in any way related to the '176 Patent, Diversified contends that the district court improperly granted Wagner's motion for summary judgment. According to Diversified, the district court's interpretation had the erroneous effect of adding contractual language, such that the release language prohibits actions "in any way related to [*a patent related to* ] the '176 Patent" (emphasis added). In addition, Diversified notes that this construction potentially releases entire families of patents based on similar technology, even later-acquired patents with no familial connection to the '176 patent. Finally, Diversified also argues that the release does not preclude claims under the '123 patent because Wagner did not contract to have the then-existing patent included in either the release or the Cross–License.

In response, Wagner argues that the district court correctly concluded that the unambiguous language of the release bars Diversified's suit. According to Wagner, the plain language bars actions having a general and indirect relationship to the '176 patent. Specifically, Wagner notes that the word "related" covers a broad range of logical and causal connections, and the phrase "in any way" further demonstrates that the parties intended the

release to have the broadest possible scope. In addition, Wagner asserts that this court previously interpreted release language broadly in *Augustine*. As a factual matter, Wagner maintains that the action is "related to the '176 Patent" in at least four material ways: (1) the '176 patent is the most relevant piece of prior art to the '123 patent; (2) in order to determine damages for infringement, the factfinder would have to assess the extent to which the '123 patent is an advance over prior art (in part because Wagner is licensed to use the '176 patent on similar technology); (3) there are allegations of common inventorship between the '176 and '123 patent; and (4) the '176 patent would be integral for purposes of construing the claims of the '123 patent because of similarities in the claim and specification language. Finally, Wagner contends that, rather than it (Wagner) having the burden of contracting to have the then-existing '123 patent included in the Settlement Agreement, Diversified had the burden of reserving its right to sue on the patent.

We conclude that the plain language of the release requires a narrow construction. The plain language releases Wagner from "any and all *actions* ... arising out of or in any way related to the '176 Patent" (emphasis added). We agree with both of the parties that the release is unambiguous; however, we agree with Diversified as to its proper construction. The phrases "arising out of" and "in any way related to" refer back to the '176 patent and require a relationship between the action and the patent itself. We similarly note the order of the language in the release. Under the language of the release, the issue is whether an action is related to the '176 patent, not whether the '176 patent is related to the action.

Based on our reading of the release, we conclude that the district court improperly construed it to preclude Diversified's suit on the '123 patent. As discussed, we focus on the nature of the action and its relation to the '176 patent. Here, the action arises out of and is related to the '123 patent. The technology at issue for purposes of performing the infringement analysis—the improved duckbill valve—is solely claimed in the '123 patent. The action itself therefore "relates to" the '123 patent because that patent gives Diversified the limited monopoly right to bring this cause of action. As also discussed, the fact that the '176 patent relates to this action is not relevant with respect to the release; this would reverse the language of the disclaimer.

Both the district court and Wagner erroneously focus their analysis on the relatedness of the '123 patent to the '176 patent, not the relatedness of the action to the '176 patent. As summarized above, the district court listed six reasons why "the '123 patent is related to the '176 patent." But, as also discussed, the release depends on the relation of the *action* to the '176 patent, not the relation of the '123 patent to the '176 patent. Similarly, Wagner argues that the "action is related to the '176 patent in at least four material ways," summarized above. Yet each of these "ways" is more a recitation of how the '123 patent is related to the '176 patent than a showing that the action itself is related to the '176 patent. According to the language of the release, however, we must focus on the connection between the *action* and the '176 patent, not the connection between a *patent* and the '176 patent. The proof offered by both the district court and Wagner therefore misses the mark by failing to show how the current action, brought under the '123 patent, is related to the '176 patent.

Given our interpretation of the language of the release, discussed above, we agree

with Diversified that the district court's construction had the erroneous effect of adding language to the contract. "We cannot add terms to the contract by interpretation when the terms set out by the parties are unambiguous." *Burke v. Fine,* 608 N.W.2d 909, 913 (Minn.Ct.App.2000); *see also George Hyman Constr. Co. v. United States,* 832 F.2d 574, 581 (Fed.Cir. 1987) ("If we accepted [Wagner's] argument, we would have to rewrite the contract, and insert words the parties never agreed to, which we do not have the authority to do."). By concluding that Diversified released Wagner from the current suit, the court erroneously prohibited actions "arising out of or in any way related to [*a patent related to*] the '176 Patent."

Notably, this court's decision in *Augustine* does not, as Wagner suggests, compel a different result. *Augustine* was a case of first impression for this court in interpreting the language of a settlement agreement between two parties. 194 F.3d at 1370. In *Augustine,* as here, the court had to apply Minnesota contract law in order to determine the breadth of the release. *Id.* But the parties in *Augustine* wrote their release using much broader language than that used here. Particularly, Augustine Medical, Inc. ("AMI") released Progressive Dynamics, Inc. ("PDI") "from any and all manner of action or actions . . . that AMI and/or its owners . . . have, have had, or may have against PDI . . . relating to any acts, omissions, or statements made by PDI on or before the date of [the] Settlement Agreement." *Id.* at 1371. Based on this language, the court found that because AMI knew that it had an infringement claim against AMI at the time of the release, AMI granted PMI a release on that claim. *Id.* at 1373. The release at issue in this case, however, is much narrower, and does not require that we affirm the district court's decision. Rather than releasing all claims based on

any acts or omissions before a given date, as in *Augustine,* the language of the release here is narrowly tailored to actions arising out of or related to one particular patent—the '176 patent. Thus, *Augustine* is distinguishable on its facts.

Finally, we do not credit either party's argument that, at the time of the Settlement Agreement, the opposing party failed to reserve its rights under the existing '123 patent. "[I]t is the burden of the parties entering into a settlement agreement to expressly reserve . . . any rights that they wish to maintain. . . ." *Id.* On the one hand, if Wagner wanted to be immune from an infringement suit involving the then-existing '123 patent, it should have specifically contracted for such a release. On the other hand, Diversified could have made it equally clear that it was explicitly reserving its right to sue on the '123 patent in the future. Given that each party had an equal opportunity to expressly reserve their rights, we find neither argument persuasive.

Based on our interpretation of the unambiguous release language, we conclude that the district court erroneously granted Wagner's motion for summary judgment. It therefore also wrongly denied Diversified's motion for a preliminary injunction on that basis. Accordingly, we remand the case to the district court for consideration of Diversified's motion for a preliminary injunction and further proceedings as warranted.

No costs.