262 F.Supp.2d 1004 (2003)
FLORIDA STATE BOARD OF ADMINISTRATION, Plaintiff,
v.
LAW ENGINEERING AND ENVIRONMENTAL SERVICES, INC., Defendant.
No. CIV. 02-4283 (DSD/FL).
United States District Court, D. Minnesota.
May 21, 2003.
*1005 Robert J. Huber, Esq. and Leonard, Street and Deinard, Minneapolis, William R. Wildman, Esq., George A. Smith, Esq., Sarah T. Holloway, Esq. and Sutherland, Asbill & Brennan, Atlanta, GA, counsel for plaintiff.
Mary C. Yeager, Esq., Michael B. Lapicola, Esq. and Faegre & Benson, Minneapolis, J. Andrew Bertron, Jr., Esq., Thomas J. Guilday, Esq. and Huey, Guilday, Tucker, Schwartz & Williams, Tallahassee, FL, counsel for defendant.

*1006 ORDER
DOTY, District Judge.
This matter is before the court upon plaintiff Florida State Board of Administration's ("FSBA") motion for partial summary judgment on defendant Law Engineering and Environmental Services, Inc.'s ("Law") affirmative defenses of (1) improper venue, (2) statute of limitations, (3) economic loss doctrine, (4) no fiduciary duty, (5) failure to allege a cause of action for damages and (6) failure to state a cause of action for indemnity. This matter also is before the court upon defendant's motion for summary judgment on plaintiffs claims of (1) breach of fiduciary duty, (2) negligence, (3) negligent misrepresentation and (4) indemnification. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants plaintiffs motion for partial summary judgment on defendant's affirmative defenses of improper venue, statute of limitations, and the economic loss doctrine only as it applies to plaintiffs negligent misrepresentation claim. The court denies plaintiffs motion for partial summary judgment on defendant's affirmative defenses of the economic loss doctrine as it applies to plaintiffs fiduciary duty and negligence claims, failure to allege a cause of action for damages and failure to state a cause of action for indemnity. The court grants defendant's motion for summary judgment on plaintiffs breach of fiduciary duty, negligence and indemnification claims and denies defendant's motion for summary judgment on plaintiffs negligent misrepresentation claim.

BACKGROUND
Plaintiff is an agency of the State of Florida responsible for managing and investing the assets of various trust funds. In the summer of 1997, plaintiff expressed interest in purchasing commercially developed property in Eden Prairie, Minnesota. The property, known as the One Southwest Crossing Office Building ("One Southwest Crossing"), consists of a five-story, Class A office building and an attached three-level parking structure.
Before purchasing One Southwest Crossing, plaintiff hired defendant to assess its structural soundness. The parties executed a building assessment agreement. Pursuant to this agreement, defendant inspected One Southwest Crossing and issued a building condition assessment report. According to the report, "the structure did not exhibit signs of structural distress or excessive movement or distortion. With adequate and continued future maintenance, the parking structure should perform as designed well beyond the 10-year evaluation period." (PL's App. Tab 2, at 20.) The report also estimated that maintenance costs for the parking structure would not exceed $487,600 over the ten-year evaluation perk od, with only $34,600 of this amount needed for immediate repair. (PL's App. Tab 2, at 21.)
Plaintiff purchased One Southwest Crossing through its whollyowned subsidiary 11095 Viking, Inc. ("Viking") for $34,100,000. As plaintiff began to implement the maintenance program that defendant recommended, the parking structure experienced concrete failures including corroded reinforcing steel, concrete delaminations, spalling in the structural slabs, water intrusion, and distress on the structure's protective traffic coating. Plaintiff began repairs and it is estimated that the total cost of repairs and associated expenses will exceed $1.8 million. Plaintiff contends that if it had known that it would be required to spend at least $1.8 million to repair and maintain the parking structure, it would not have purchased One Southwest Crossing or would have negotiated a much lower price.
*1007 Plaintiff filed this action against defendant alleging (1) breach of contract (count one) (2) breach of fiduciary duty (count two) (3) negligence (count three), (4) negligent misrepresentaion (count four) and (5) indemnification (count five). Dedendant raiases several affirmative defenses, including: (1) improper venue, (2) statute of limitations, (3) the economic loss rule, (4) no fiduciary duty, (5) failure to allege a cause of action for damages and (6) failure to state a cause of action for indemnity, Plaintiff moves for partial summary judgment on those six affirmative defenses and defendant moves for summary judgment on counts two through five of the complaint.
After a review of the file, record and proceedings herein, and for the reasons stated, the court grants plaintiffs motion for partial summary judgment on defendant's affirmative defenses of improper venue, statute of limitations, and the economic loss doctrine only as it applies to plaintiffs negligent misrepresentation claim. The court denies plaintiffs motion for partial summary judgment on defendant's affirmative defenses of the economic loss doctrine as it applies to plaintiffs fiduciary duty and negligence claims, failure to allege a cause of action for damages and failure to state a cause of action for indemnity. The court grants defendant's motion for summary judgment on plaintiffs breach of fiduciary duty, negligence and indemnification claims and denies defendant's motion for summary judgment on plaintiffs negligent misrepresentation claim.

DISCUSSION

I. Standard for Summary Judgment
Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In order for the moving party to prevail, it must demonstrate to the court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)(quoting Fed. R.Civ.P. 56(c)). A fact is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. See id. at 252, 106 S.Ct. 2505.
On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255, 106 S.Ct. 2505. The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial. See Celotex, 477 U.S. at 324, 106 S.Ct, 2548. Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23, 106 S.Ct. 2548.

II. Parties' Motions for Summary Judgment
As stated, plaintiff moves for partial summary judgment on six of defendant's affirmative defenses: (1) improper venue, (2) statute of limitations, (3) the economic loss rule, (4) no fiduciary duty, (5) failure to allege a cause of action for damages and (6) failure to state a cause of action for *1008 indemnity. Defendant moves for summary judgment on plaintiffs breach of fiduciary duty, negligence, negligent misrepresentation and indemnification claims. The court considers each issue in turn, and, where appropriate, considers both parties' motions together.

A. Venue
Article XIV of Paragraph E of the contract between the parties provides:
This Agreement shall be governed by and construed in accordance with the laws of the State of Florida. Consultant hereby irrevocably agrees that any legal action or proceeding against it with regard to this Agreement may be brought in the Courts of the State of Florida or in the United States District Court of Florida located in Leon County and by its execution and delivery of this Agreement, Consultant hereby irrevocably submits to each such jurisdiction and hereby irrevocably waives any and all objections which it may have as to venue in any of said courts.
(App., Tab 1, Master Agreement, Art. XIV at ¶ E.) Based upon the forum selection clause in Paragraph E, defendant asserts that this action should be dismissed for improper venue in defendant's first affirmative defense. Plaintiff moves for summary judgment on that affirmative defense because, according to palintiff, the forum selection clause in Paragraph E is permissive rather than mandatory, and thus venu is proper in Minnesota. After careful review, the court grants that motion.[1]
In construing a contract, the court must "give effect to the intention of the parties as expressed in the language they used in drafting the whole contract." Goebel v. North Suburban Agencies, Inc.,' 567 N.W.2d 511, 515 (Minn.1997). To-ascertain the parties' intentions, the court mustinterpret the contract as a whole and attempt to harmonize all the contract's terms. See, e.g., Jacobs v. Pickands Mather & Co., 933 F.2d 652, 657 (8th Cir.1991); Servais v. TJ Mgmt, 973 F.Supp. 885, 892 (D.Minn.1997); Chergosky v. Crosstown Bell, Inc., 463 N.W.2d 522, 525 (Minn.1990); Brookfield Trade *1009 Ctr. v. County of Ramsey, 584 N.W.2d 390, 394 (Minn.1998); S O Designs USA v. Rollerblade, Inc., 620 N.W.2d 48, 53 (Minn. Ct.App.2000); Republic Nat'l Life Ins. v. Lorraine Realty Corp., 279 N.W.2d 349, 354 (Minn.1979). The court gives the languge of the contract its plain and ordianry meaning. See, e.g., id.; Brookfield, 548 N.W.2d at 394; Servais, 973 F.Supp. at 892; S O Designs USA, 620 N.W.2d at 52. Because of the presumption that the parties intended the language used to have effect, court attempts to avoid an interpretation of the contract that would render a provision meaningless. Chergosky, 463 N.W.2d at 526; Brookfield, 584 N.W.2d at 394.
A forum selection clause in a contract is presumed valid. Kirckof, 2002 WL '31718394 at *2; Taylor, 169 F.Supp.2d at 1060. Courts distinguish between mandatory and permissive forum selection clauses. See, e.g., McDonnell Douglas Corp. v. Islamic Republic of Iran, 758 F.2d 341, 346-47 (8th Cir.1985); Blanco v. Banco Indus, de Venezuela, 997 F.2d 974, 979 (2d Cir.1993); GMAC Commercial Mortg. Corp. v. LaSalle Bank Nat'l Ass'n, 242 F.Supp.2d 279, 282-83 (S.D.N.Y.2002); Kirckof, 2002 WL 31718394 at *2; Midwest Oil Seeds, Inc. v. Limagrain Genetics Corp., No. 4-00-CV-90695, 2001 WL 741738, *1, *l-2 (S.D.Iowa Feb.14, 2001); Fin. Sys. & Equipment, 2000 WL 714331 at *2; Best Buy Co., 1991 WL 156571 at *2.
"Permissive clauses constitute nothing more than a consent to jurisdiction and venue in the named forum and do not exclude jurisdiction or venue in any other forum." Quinones, 509 So.2d at 274-75. Mandatory clauses must "clearly designates one forum that is to be the exclusive forum." Midwest Oil Seeds, Inc., 2001 WL 741738 at *1. Put another way, mandatory clauses must contain specific language indicating the parties' intent to make jurisdiction exclusive.[2]Kirckof, 2002 WL 31718394 at *2 ("`[w]hen only jurisdiction is specified the clause will generally not be enforced without some further language indicating the parties' intent to make jurisdiction exclusive.'") (citation omitted); GMAC, 242 F.Supp.2d at 282 ("`The normal construction of jurisdiction rules includes a presumption that, where jurisdiction exists, it cannot be ousted or waived absent a clear indication of such a purpose ...'") (citation omitted).
Generally, courts have found that use of the words "may" and "should" signify permissive clauses, while use of the words "shall," "will" or "must" signify mandatory clauses. McDonnell Douglas Corp., 758 F.2d at 347 (describing "should" as permissive and "must" as mandatory); GMAC, 242 F.Supp.2d at 283 (using the word "may" suggests permissive forum selection clause); Fin. Sys. & Equipment, 2000 WL 714331 at *2 (finding use of words "may be resolved" to be permissive because it does not place any limits of parties' ability to bring an action outside of forum stated in forum selection clause); Best Buy Co., 1991 WL 156571 at *2 ("If venue is set forth using the mandatory 'shall,' the clause is enforced as written and venue is found to be exclusive in the designated forum."); Quinones, 509 So.2d at 275 (describing the word "may" as permissive *1010 and "may only" and "shall" as mandatory); Blanco, 997 F.2d at 979 (stating "may be brought" is permissive language).
The forum selection clause in Paragraph E contains no mandatory language and evinces no intent to make jurisdiction exclusive. It merely provides that any legal action with regard to the agreement "may be brought in the Courts of the State of Florida or in the United States District Court of Florida located in Leon County...." (App., Tab 1, Master Agreement, Art. XIV at HE (emphasis added).) The fact that the clause does not contain any mandatory or exclusive language but instead includes the permissive words "may be brought" illustrates that the clause does not require but merely permits plaintiff to file suit in Florida. See GMAC, 242 F.Supp.2d at 283; Fin. Sys. & Equipment, 2000 WL 714331 at *2; Quinones, 509 So.2d at 275; Blanco, 997 F.2d at 979.
Reading the clause within the context of the language in Paragraph E further illustrates that the forum selection clause is permissive. Paragraph E illustrates a clear distinction between the mandatory word "shall" and the permissive word "may" when providing that "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of Florida," but that legal action "may be brought in the Courts of the State of Florida or in the United States District Court of Florida..." Id. (emphasis added). Because the court must give the terms of a contract their plain and ordinary meaning and because the court must attempt to avoid an interpretation of the contract that would render a provision meaningless, the court concludes that the parties intended the words "shall" and "may" to have different meanings in the contract. See McDonnell Douglas, 758 F.2d at 347 ("That the parties intended `should' to be differentiated from `shall' is also suggested by the use of the word `shall' to describe the rights and duties of the parties in eighteen other clauses of the [contract]."): Quinones, 509 So.2d at 275 (finding differentiation between the permissive word "may" and the mandatory words "shall" and "may only" in the contract).
Therefore, based upon the language of the forum selection clause and reading it within the context of the paragraph as a whole, the court concludes that the forum selection in permissive and thus that venue is proper in Minnesota. Accordingly, the court grants plaintiffs motion for" summary judgment on defendant's affirmative defense of improper venue.

B. Statute of Limitations
Plaintiff also moves for summary judgment on defendant's statute of limitations defense because plaintiff alleges that Minnesota's statute of limitations applies and that Minnesota's statute of limitations does not bar its claims.[3] After conducting Minnesota's choice of law analysis, the court concludes that Minnesota's statute of limitations applies and, because the parties do not appear to dispute that plaintiff timely filed its case within Minnesota's statute of limitations, the court grant's plaintiffs motion for summary judgment on defendant's statute of limitations defense.
A federal court sitting in diversity must apply the choice of law principles of the state in which it sits, in this case Minnesota. Fuller v. Hartford Life Ins. Co., 281 F.3d 704, 707 (8th Cir.2002). When conducting *1011 a choice of law analysis under Minnesota law, the court's threshold task is to decide whether the choice of one state's law over another creates an actual conflict. Honeywell v. Ruby Tuesday, 43 F.Supp.2d 1074, 1077 (D.Minn.1999). If a conflict is detected, the court's next step is to determine whether the law involved is procedural or substantive. Id. If the court concludes that the law involved is procedural, then the court will apply the law of the forum without further analysis. Id.; Davis v. Furlong, 328 N.W.2d 150, 153 (Minn.1983)("[Minnesota follows] the almost universal rule that matters of procedures and remedies [are] governed by the law of the forum state."); Zaretsky v. Molecular Biosystems, Inc., 464 N.W.2d 546, 548 (Minn.Ct.App.1990)("In Minnesota, the well-settled rule is that matters of procedure and remedies are governed by the law of the forum."); Fredin v. Sharp, 176 F.R.D. 304, 308 (D.Minn.1997)(same).
However, if the court concludes that the law involved is substantive, then it must apply the five choice-influencing factors first articulated by the Minnesota Supreme Court in Milkovich v. Saari: (1) predictability of result, (2) maintenance of interstate order, (3) simplification of the judicial task, (4) advancement of the forum's governmental interest and (5) application of the better rule of law. 295 Minn. 155, 203 N.W.2d 408, 412 (1973); see Honeywell, 43 F.Supp.2d at 1077.
Finally, as a general matter, the court must bear in mind the requirements of the federal constitution when conducting the foregoing analysis: "`[F]or a State's substantive law to be selected in a constitutionally permissible manner, the State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary of fundamentally unfair.' " Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 818, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985)(quoting Allstate Ins. Co. v. Hague, 449 U.S. 302, 312-13, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981)).
In this case, there is an apparent tension between Minnesota and Florida statute of limitations law. Statute of limitations is a procedural matter in Minnesota because it relates to remedy. See, e.g., Fredin, 176 F.R.D. at 308; Graham v. Knutson Mortg. Corp., No CT 94-11043, 1996 WL 407491, at * 8 (D. Minn. June 18, 1996). "In Minnesota it is well settled law that matters of procedure and remedies are governed by the forum state." Graham, 1996 WL 407491, at * 8; Zaretsky, 464 N.W.2d at 548; Fredin, 176 F.R.D. at 307-09; Reinke v. Boden, No. C6-91-1990, 1992 WL 43306, at *1 (Minn.Ct.App. Mar.10, 1992)(unpublished). Thus, Minnesota's statute of limitations applies,[4] and, because there appears to be no dispute between the parties that this action was commended within Minnesota's six-year statutory period, the court grants plaintiffs motion for partial summary judgment on defendant's statute of limitations defense.

C. Economic Loss Rule
Plaintiff next moves for partial summary judgment on defendant's affirmative defense based on the economic loss doctrine. Plaintiff argues that the choice of law clause does not govern its tort claims. Instead, *1012 plaintiff asserts that Minnesota law applies and that Minnesota does not apply the economic loss doctrine to claims against engineers for negligence. In opposing plaintiffs motion, defendant responds that the choice of law clause governs plaintiffs tort claims. Defendant therefore argues for summary judgment on plaintiffs breach of fiduciary duty, negligence and negligent misrepresentation claims because, according to defendant, Florida's economic loss rule applies to and bars those tort claims. Plaintiff responds that even under Florida law, the economic loss doctrine does not bar plaintiffs claims. The court first considers whether the choice of law clause governs plaintiffs tort claims and then evaluates whether the economic loss doctrine bars those claims under the relevant law.

1. Choice of Law Clause Governs Plaintiffs Torts Claims
As a threshold matter, the court must determine whether the choice of law clause governs plaintiffs tort claims and thus defendant's economic loss doctrine defense. In determining whether a choice of law provision in the parties' agreement will be given effect, a federal court sitting in diversity looks to the choice of law principles of the forum state, in this case Minnesota. Minn. Mining and Mfg. Co. v. Kirkevold, 87 F.R.D. 324, 331 (D.Minn. 1980). Minnesota courts honor choice of law clauses. Northwest Airlines, Inc. v. Astraea Aviation Servs., Inc. Ill F.3d 1386, 1392 (8th Cir.1997); Milliken and Co. v. Eagle Packaging Co., 295 N.W.2d 377, 380 n. 1 (Minn.1980).
Many courts, though not applying Minnesota law, have distinguished between broad and narrow choice of law provisions in order to determine whether a choice of law agreement includes tort claims. See Inacom Corp. v. Sears, Roebuck and Co., 254 F.3d 683, 687 (8th Cir.2001); Heating & Air Specialists, Inc. v. Jones, 180 F.3d 923, 930 (8th Cir.1999); Caton v. Leach Corp., 896 F.2d 939 (5th Cir.1990); Jiffy Lube Int'l, Inc. v. Jiffy Lube of Penn., Inc., 848 F.Supp. 569, 576 (E.D.Pa.1994). Those courts have found that narrow choice of law provisions which provide that the contract will be "governed by" or "construed" under the laws of a particular state do not govern tort claims between contracting parties. See, e.g., Inacom Corp. 254 F.3d at 687 (clause providing that "Agreement shall be governed by and construed in accordance with the laws of the State of Illinois," is not broad enough encompass tort claims); Caton 896 F.2d at 942-43 (clause stating that "[t]his agreement shall be construed under the laws of he State of California" is a narrow clause and thus does not address tort claims); Union Oil Co. of Ca. v. John Brown E & C, No. 94C4424, 1994 WL 535108, at *2-3 (N.D.Ill., Sept.30, 1994)(clause providing that "[t]his contract shall be construed, interpreted and enforced in accordance with the laws and jurisprudence of the State of California" does not suggest that the parties intended tort and other noncontractual claims to be governed by California law); Jiffy Lube Int'l, Inc., 848 F.Supp. at 576 (clause stating that "[t]his Agreement shall be construed, interpreted and enforced in accordance with the laws of the State of Maryland" is narrow and thus does not include tort claims.); Florida Evergreen Foliage v. E.I. Du Pont De Nemours & Co., 135 F.Supp.2d 1271, 1278 (S.D.Fla.2001)(clause providing "[t]his release shall be governed and construed in accordance with the laws of the State of Delaware" does not govern tort claims); Burger King Corp. v. Austin, 805 F.Supp. 1007, 1012 (S.D.Fla.1992)(clause stating that agreement "[s]hall be governed and construed under and in accordance with the laws of the State of Florida" does not encompass tort claims).
*1013 However, in Northwest Airlines, Inc. v. Astraea Aviation Servs., inc., 111 F.3d at 1392, the Eighth Circiut Court of Appeals, applying Minnesota law, recognized that a choice of law provision in a contract will govern non-contract claims if the those claims "are closely related to the interpretation of the contract[] and fall within the ambit of the express agreement" that the contract will be interpreted under the laws of a particular state. In that case, Northwest Airlines, Inc. ("Northwest") contracted with Astraea Aviation Services, Inc. ("Astraea") for Astraea to perform routine maintenance on Northwest aircraft and to refurbish other newly acquired aircraft. After problems arose in completing the work, Northwest sued Astraea for breach of contract and Astraea counterclaimed, alleging breach of contract and tort claims. 'Id. at 1389. Each refurbishment contract between the parties stated: "This Agreement shall be deemed entered into within and shall be governed by and interpreted in accordance with the laws of the State of Minnesota... ."Id. at 1392.
Astraea claimed that the choice of law provisions did not govern the tort claims of negligent performance, misrepresentation, deceptive trade practices and unjust enrichment because they were not contract claims. Despite the seemingly narrow language of the choice of the law provision, the court disagreed, explaining:
Astraea's claims for negligent performance, misrepresentation, deceptive trade practices, and unjust enrichment raise issues of performance and compensation for work done under the refurbishment contracts. Although mainly styled as torts, these claims stem for Northwest's alleged failure promptly to provide functioning parts and adequate support for the refurbishment project, as required under the contracts. The unjust enrichment claim concerns the amount of compensation which Astraea should receive for refurbishing aircraft pursuant to a contract. These claims are closely related to the interpretation of the contracts and fall within the ambit of the express agreement that the contract would be governed by Minnesota law. Astraea thus consented to the application of Minnesota law to such claims.
Id.
Although plaintiff claims that Astraea is distinguishable from this case, (Pl's Mem. Opp'n Def.'s Mot. Partial Summ. J. at 4), plaintiff never explains how Astraea is distinguishable. Like plaintiff, the court finds it hard to distinguish Astraea because the circumstances in Astraea are so similar to the circumstances in this case. Here, the choice of law clause in the contract between the parties appears to be narrow, providing that "|t]his Agreement shall be governed by and construed in accordance with the laws of the State of Florida." (Pl's App., Tab 1, Art. XIV at f E (emphasis added).) However, as in Astraea, plaintiffs tort claims are closely related to the parties' contractual relationship.
Specifically, plaintiffs breach of fiduciary duty claim is related to contract performance. In the introduction of the complaint, plaintiff alleges that defendant "breached the express fiduciary duties it undertook pursuant to [its] agreement" with plaintiff. (Compl. at 1.) Plaintiff further alleges that "[i]n the Building Assessment Agreement, Law Engineering explicitly undertook to act as a fiduciary for FSBA in its performance of the agreement...." (Compl. § 14.) Plaintiffs allegation is based upon Section XIII.B of the contract, which provides, in part: "Consultant accepts the relationship of trust and confidence established between Consultant and the Board by this Agreement and acknowledges that the Board may rely on Consultant's advice and counsel." Plaintiff *1014 further emphasizes the connection between the breach of fiduciary duty claim and contract performance throughout count two of the complaint. (Compl. at ¶ 35 41.) Thus the court finds that plaintiffs fiduciary duty claim arises from the contract between the parties and is closely related to defendant's performance under the contract.
Plaintiffs negligence claim also is closely related to defendant's performance under the contract. In count three of the complaint, plaintiff alleges: "Law Engineering agreed to perform its assessment services 'with sufficient detail and scope to meet the standards of practice exercised by a responsible engineering professional in performing such services for an institutional investor of real estate in the current marketplace.'" Plaintiff then cites Section XIII.B of the contract. The issues raised in the negligence claim essentially concern whether defendant's assessment sufficiently met the contract's requirements and whether defendant failed to sufficiently perform its obligation under Section XIII.B. While the complaint also alleges that defendant has a duty to exercise reasonable care, that duty is largely the same as defendant's duty under the contract, as plaintiff conceded in oral argument. Thus, plaintiffs negligence claim is closely intertwined with defendant's performance under the contract.
Further, plaintiffs claim of negligent misrepresentation closely relates to defendant's performance of the contract because that allegation is premised upon plaintiffs allegation that the report defendant delivered pursuant to the contract did not accurately reflect the condition of the structure, the extent of project repair or the total cost of maintenance.
Thus, Astraea is directly on point. As in Astraea, this case involves the application of Minnesota law, the law of the forum, to determine whether a seemingly narrow choice of law clause includes tort claims that, as in Astraea, are closely related to contract performance. Following the reasoning in Astraea, the court finds that the tort claims involved in this case are closely intertwined with the interpretation of the contract and "fall within the ambit of the express agreement that the contract would be governed by [Floridal] law." Astraea, 111 F.3d at-1392.
Even though Astraea is directly on point, plaintiff nevertheless relies on the Eighth Circuit case Inacom Corp. v. Sears, Roebuck and Co., 254 F.3d 683, 687 (8th Cir.2001) and argues that Minnesota law applies to the tort claims in this case, In Inacom, Inacom filed an action against Sears alleging breach of contract, fraudulent misrepresentation and fraudulent concealment, and Sears counterclaimed' for breach of contract. Inacom, 254 F.3d at 686. The agreement between the parties stated that the "[a]greement shall be governed by and construed in accordance with the law of the State of Illinois." The court instructed the jury to evaluate Inacom's breach of contract claim under Illinois law and its fraudulent concealment claim under Nebraska law. Id. In its motion for a new trial, Sears argued that the court erred in instructing the jury on choice of law because, according to Sears, the fraudulent concealment claim was intertwined with the contract claim and because it therefore fell within the ambit of the choice of law provision stating that Illinois law governs all contract claims. Id. The Eighth Circuit Court of Appeals, applying Nebraska law, disagreed, explaining:
While this provision adequately covers disputes concerning how to construe the [agreement], the language is not broad enough to govern the choice of law for the fraudulent concealment claim, which sounds in tort. Although the claim arose out of the circumstances surrounding the formation of the contract, there *1015 is no indicarion in the [agreement] that the parties intended to elect Illinois law as the forum for every contract-related claim.
Id.
While plaintiff argues that the court should follow Inacom, Inacom is clearly distinguishable from this case for three reasons. The court in Inacom applied Nebraska law rather than Minnesota law, the law of the forum in this case. The tort claims involved in Inacom did not relate to contractual performance, as they do in this case, but instead related to allegations that arose from contract formation. And, the choice of law provision in Inacom was narrower than the provision in this case, providing that "the Agreement shall be governed by and construed in accordance with the law of the State of Illinois, as applied to contracts." Id. at 687 (emphasis added). Thus, because the court concludes that Astraea rather than Inacom Corp. governs this case, the court finds that the choice of law provision in the contract between the parties incorporates plaintiffs tort claims alleged in counts two, three and four of the complaint and the court applies Florida law to those claims.

2. Economic Loss Doctrine in Florida.
The court next must consider whether the economic loss doctrine bars plaintiffs tort claims under Florida law. Defendant argues that Florida's economic loss doctrine bars plaintiffs breach of fiduciary duty, negligence and negligent misrepresentation claims because, according to defendant, plaintiff has not alleged that defendant's conduct resulted in personal injury or damage to other property and has not alleged a tort independent from defendant's alleged breach of contract. (Mem. Law Supp. D.'s Mot. Partial Summ. J. at 6.) Plaintiff responds that, pursuant to the Florida Supreme Court's decision Moransais v. Heathman, 744 So.2d 973 (Fla.1999), the economic loss doctrine does not bar its breach of fiduciary duty, negligence and negligent misrepresentation claims.
The economic loss doctrine originally appeared in product liability cases. Moransais, 744 So.2d at 979. Courts prohibited parties from suing in tort for purely economic losses to a product or object provided to another for consideration, reasoning that contract principles are more appropriate than tort principles for resolving economic loss without an accompanying physical injury or property damage claim. Id.,see also Florida Power & Light Co. v. Westinghouse Elec. Corp., 510 So.2d 899, 902 (Fla.1987); Casa Clara Condo. Ass'n v. Charley Toppino & Sons, Inc., 620 So.2d 1244 (Fla.1993); AFM Corp. v. Southern Bell Tel. & Tel, Co., 515 So.2d 180 (Fla. 1987).
In Moransais v. Heathman, the most recent Florida Supreme Court case analyzing the doctrine, a homeowner brought a negligence action against engineers who conducted a pre-purchase inspection of the house pursuant to their employer's contract with the homeowner. Having recognized that a cause of action for professional negligence existed against the individual engineers despite no privity of contract between the engineers and homeowner, the court considered whether the economic loss rule barred such claims where there was no personal injuries or property damage other than the defects in the home inspected. Id. at 979. The court concluded that the economic loss rule did not bar the professional negligence claim against the engineers. Id. at 983.
In reaching that conclusion, the court acknowledged that its "pronouncements on the rule have not always been clear..." and explained that its holdings on the doctrine "have appeared to expand the application of the rule beyond its principled *1016 origins and have contributed to applications of the rule by trial and appellate courts to situations well beyond [the court's] original intent." Id. The court cited its decisions in PK Ventures, Inc. v. Raymond James & Assocs., 690 So.2d 1296 (Fla.1997) and HTP, Ltd. v. Lineas Aereas Costarricenses, S.A, 685 So.2d 1238 (Fla.1996) as demonstrating the court's "recent determination to limit the application and reach of the economic loss rule." Moransais, 744 So.2d at 981. It favorably quoted the following language from HTP:
The economic loss rule has not eliminated causes of action based upon torts independent of the contractual breach even though there exists a beach [sic] of contract action. Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract.
Id. (quoting HTP, 685 So.2d at 1239).
The Moransais court then concluded: Today, we again emphasize that by recognizing that the economic loss rule may have some genuine, but limited, value in our damages law, we never intended to bar well-established common law causes of action, such as those for neglect in providing professional services. Rather, the rule was primarily intended to limit actions in the product liability context, and its application should generally be limited to those contexts or situations where the policy considerations are substantially identical to those underlying the product liabilitytype analysis. We hesitate to speculate further on situations not actually before us. The rule, in any case, should not be invoked to bar well-established causes of action in tort, such as professional malpractice. Id. at 983.
Based upon the court's analysis in Moransais, especially its favorable citation to the language in HTTP, the court concludes that Moransais affirmed the proposition that the economic loss rule generally "bars tort claims that are based on actions inextricably intertwined with the acts constituting the breach of contract." Excess Risk Underwriters, Inc. v. Lafayette Life Ins. Co., 208 F.Supp.2d 1310, 1318 (S.D.Fla.2002) With that rule from Moransais, the court evaluates whether the economic loss doctrine bars plaintiff's breach of fiduciary duty, negligence'and negligent misrepresentation claims.

a. Fiduciary Duty
While the Moransais court stated that the economic loss rule "should not be invoked to bar well-established causes of actions in tort, such as professional malpractice," the court also "hesitate[d] to speculate ... on situations not actually before [the court]." Moransais 744 So.2d at 983; see Crowell v. Morgan Stanley Dean Witter Servs., 87 F.Supp.2d 1287, 1292 (S.D.Fla.2000)("the holding of Moransais was limited explicitly to the claim of professional negligence.").
Despite the fact that the Moransais court explicitly limited its holding to the claim of professional negligence, courts interpreting Florida's economic loss doctrine since Moransais appear to disagree over whether the economic loss doctrine bars breach of fiduciary duty claims after Moransais. See Excess Risk, 208 F.Supp.2d at 1316 (economic loss rule barred breach of fiduciary duty claim because party had not alleged facts independent from the contract); Medalie v. FSC Sec. Corp., 87 F.Supp.2d 1295 (S.D.Fla.2000)(economic loss rule barred plaintiffs breach of fiduciary duty claims); Hilliard v. Black, 125 F.Supp.2d 1071 (N.D.Fla.2000)(economic loss rule does not bar claim of breach of fiduciary duty where breach of fiduciary duty claim was independent of breach of *1017 contract claim); but see performance Paint Yacht Refinishing, Inc. v. Haines, 190 F.R.D. 699, 701 (S.D.Fla.1999)(rejecting argument that economic loss doctrine barred breach of fiduciary duty claim even though breach of fiduciary duty claim may be dependent on breach of contract claim); Invo Fla. inc. v. Somerset Venturer, Inc., 751 So.2d 1263, 1267-68 (Fla. 3d DCA 2000)(economic loss rule does not bar claim of breach of fiduciary duty because breach of fiduciary duty is a well-established tort claim); First Equity Corp. of Florida, Inc. v. Watkins, 1999 WL 542639, *1 (Fla. 3d DCA, July 28, 1999)("We think the Moransais opinion makes it quite clear that the cause of action for breach of fiduciary duty, even [if] there is an underlying oral or written contract.")(quoted in Crowell, 87 F.Supp.2d 1287).
Because the Moransais court "reiterated the principle that, in order for a plaintiff to sustain a tort claim, the allegations establishing the tortious conduct must be independent from the allegations supporting a breach of contract," Excess Risk, 208 F.Supp.2d at 1315, and because the Moransais court explicitly limited its holding to professional malpractice claims, it is clear that the Moransais court did not intend its decision to reach breach of fiduciary duty claims. Therefore, the economic loss doctrine continues to bar breach of fiduciary duty claims if those claims are dependent upon a breach of contract claim after Moransais. Keeping that principle in mind, the court evaluates plaintiffs breach of fiduciary duty claim.
In Excess Risk, a post-Moransais decision, plaintiff Excess Risk Underwriters, Inc., ("ERU"), an insurance administration company, sued defendants Robert Dube, an underwriter, and Lafayette Life Insurance Company, alleging, among other claims, breach of contract and breach of fiduciary duty. Excess Risk, 208 F.Supp.2d at 1312. In defendant Dube's motion to dismiss, he claimed that the economic loss doctrine barred ERU's breach of fiduciary duty claim. The court agreed and granted Dube's motion to dismiss. Id. at 1316. The court reasoned that "ERU's breach of fiduciary duty claim against Dube is barred by the economic loss rule because ERU has not alleged facts independent from the contract" and because the breach of fiduciary duty claim arose solely as a result of the existence of the contract.[5]Id.; see also McCutcheon v. Kidder, Peabody & Co., Inc., 938 F.Supp. 820, 824 (S.D.Fla.1996)(holding that economic loss rule barred claim for breach of fiduciary duty where plaintiffs claim arose "solely as a result of the existence of a contract between the parties"); Hilliard, 125 F.Supp.2d at 1080 (economic loss rule did not bar breach of fiduciary duty claim where that claim was independent of breach of contract claim); Clayton v. State Farm Mut. Auto. Ins. Co., 729 So.2d 1012, 1014 (Fla. 3d DCA 1999)(holding that economic loss rule barred claim for breach of fiduciary duty where precontract misrepresentations were directly related to alleged breach of contract); Detwiler v. Bank of Cent. Fla., 736 So.2d 757, 759 (Fla.App. 5th DCA 1999)(" Under Florida law, a cause of action for breach of fiduciary duty will not lie where the claim of breach is dependent upon the existence of a contractual relationship between the parties.").
As in Excess Risk, plaintiffs breach of fiduciary duty claim against defendant is barred by the economic loss doctrine because, as discussed, plaintiffs breach of *1018 fiduciary duty claim is dependent upon the contract between the parties and because the facts establishing the breach of fiduciary duty claim are interwoven with the contract claim. Since plaintiffs breach of fiduciary duty claim arose solely as a result of the existence of the contract between the parties, the economic loss doctrine bars that claim. See Excess Risk, 208 F.Supp.2d at 1315.
Plaintiff nevertheless seems to argue that the economic loss doctrine does not bar its breach of fiduciary duty claim based upon Moransais and subsequent case law allowing breach of fiduciary duty claims even when the duty arises from an underlying contract. See Invo Florida Inc., 751 So.2d at 1267-68 (Fla. 3d DCA 2000); Performance Paint, 190 F.R.D. at 701. That argument, however, directly contravenes the Florida Supreme Court's reasoning in Moransais, wherein the court described the limitation of the economic rule as allowing tort actions where "`intentional or negligent acts [are] considered to be independent from the acts that breached the contract.'" Excess Risk, 208 F.Supp.2d at 1317 (quoting Moransais, 744 So.2d at 981). The argument also ignores the Florida Supreme Court's holding in AFM Corp. v. Southern Bell Telephone and Telegraph Co., 515 So.2d 180 (Fla. 1987) that parties to a contract can only seek tort damages if conduct occurs that establishes a tort independent of the breach of contract. Id. at 181.[6] That argument further overlooks the key fact that the Moransais court limited its holding to professional malpractice cases. See Crowell, 87 F.Supp.2d at 1292.
The court, "therefore, is not bound by those decision that hold that the economic loss doctrine does not bar a breach of fiduciary duty claim after Moransais because the supreme court's description of the economic loss rule in Moransais is a persuasive indication that the state's highest court would decide those cases otherwise.[7]Excess Risk, 208 F.Supp.2d at 1318 n. 3 (quoting Insurance Co. of N. Am. v. Lexow, 937 F.2d 569, 571 (11th cir.1991); Contra Crowell, 87 F.Supp.2d at 1293 ("Here, there is no `persuasive indication' that the Florida Supreme Court would disagree with the Third District Court of Appeals [in First Equity ]"). Because the economic loss doctrine bars plaintiff breach of fiduciary duty claim, the court" denies plaintiffs motion for partial summary judgment on defendant's affirmative defense based on the economic loss doctrine as it applies to plaintiffs fiduciary duty claim and grants defendant's motion for summary judgment on that claim.

b. Negligence
The parties also dispute whether the economic loss doctrine bars plaintiffs negligence claim. Moransais clearly stated that the economic loss rule "should not be invoked to bar well-established causes of action in tort, such as professional malpractice." Moransais, 744 So.2d at 983. The court's analysis in Moransais, however, appears to be somewhat contradictory because the court's analysis of HTP also *1019 implies that the economic loss doctrine may bar tort claims that are dependent upon a contract when the court quoted HTP. Id. at 981 ("Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract.") (quoting HTP, 685 So.2d at 1239). The court also explained that "[w]hile the provisions of a contract may impact a legal dispute, including an action for professional services, the mere existence of such a contract should not serve per se to bar an action for professional malpractice." Id. at 984. Those statements leave open the possibility that the existence of a contract may serve to bar a professional malpractice claim in some circumstances.
This court can only resolve the apparent tension in the court's reasoning in Moransais by emphasizing that the Florida Supreme Court limited the holding in Moransais to the facts of that case, a case in which the defendants did not have a contract with the plaintiff. The court has no choice but to limit Moransais to the facts of that case and conclude that the Moransais court intended that the economic loss doctrine would not bar a professional malpractice claim where the defendants do not have a contract with the plaintiff, as in that ease. Where a contract exists between the parties, the court left open the possibility that the economic loss doctrine would bar a claim for professional malpractice if the claim is dependent upon a contract.
In this case, the economic loss doctrine bars plaintiffs negligence claim because plaintiffs negligence claim is dependent upon its breach of contract claim, as discussed above. See Perfumeria Ultra, S.A. de C.V., v. Miami Customs Servs., Inc., 231 F.Supp.2d 1218, 1223 (S.D.Fla.2002)(holding, post-Moransais, that economic loss doctrine barred negligence claim because "aggrieved party's damages emanate from breach of contract and not from an independent tort"); AFM Corp., 515 So.2d at 181 (finding no basis for recovery in negligence where plaintiff had not proved a tort independent of the breach of contract). Therefore, the court denies plaintiffs motion for partial summary judgment on defendant's affirmative defense based on the economic loss doctrine as it applies to plaintiffs negligence claim and grants defendant's motion for summary judgment on that claim.

c. Negligent Misrepresentation
While the economic loss doctrine bars plaintiffs breach of fiduciary duty and negligence claims, it does not bar plaintiffs negligent misrepresentation claim because the Florida Supreme Court has carved out an exception for that category of torts from the economic loss rule. In PK Ventures, Inc. v. Raymond James & Assocs., 690 So.2d 1296 (Fla.1997), the Florida Supreme Court held that the economic loss rule did not prevent a buyer of commercial property from recovering damages for negligent misrepresentation against the seller's broker. Id, at 1297. In recognizing the limits of the economic loss doctrine in Moransais, the Florida supreme court favorably cited PK Ventures and stated that the court has "declined to extend the economic loss rule to actions based on ... negligent misrepresentation." Moransais, 744 So.2d at 981; see Perfumeria, 231 F.Supp.2d at 1223 (explaining that the Florida supreme court has refused to apply the economic loss doctrine to the category of cases involving negligent misrepresentation); Stone Throw Condo. Assoc., Inc. v. Sand Cove Apartments, Inc., 749 So.2d 520 (F1.2d DCA 1999)(reversing trial court's decision to dismiss negligent misrepresentation claim based upon economic loss doctrine); see also Williams v. Bear Steams & Co., 725 So.2d 397 (Fla. 5th DCA 1998)(holding economic loss rule did not bar negligent *1020 misrepresentation claim where parties had no contract); Burton v. Linotype Co., 556 So.2d 1126, 1128 (Fla. 3d DCA 1989)(holding that negligent misrepresentation is a tort independent of breach of warranty claim).
Based upon the Florida's Supreme Court's decision to except negligent misrepresentation claims from the economic loss doctrine, the court concludes that the economic loss rule does not bar plaintiffs negligent misrepresentation claim, despite the fact that plaintiffs negligent misrepresentation claim is closely related to its contract claim. Accordingly, the court grants plaintiffs motion for partial summary judgment based on the economic loss doctrine as it applies to plaintiffs negligent misrepresentation claim and denies defendant's motion for summary judgment on that claim.

D. Lack of Damages
As part of plaintiffs motion for partial summary judgment, plaintiff also seeks summary judgment on defendant's sixth affirmative defense. In that affirmative defense, defendant alleges that plaintiffs complaint fails to allege a cause of action for damages because the cost of repair to the parking garage was incurred by plaintiffs subsidiary, 11095 Viking, Inc. Viewing the record in the light most favorable to the non-moving party, as is required under Fed.R.Civ.P. 56, the court concludes that genuine issues of material fact exist as to defendant's affirmative defense. Therefore, summary judgment is inappropriate on defendant's sixth affirmative defense.[8]See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

E. Indemnity.
Finally, defendant moves for summary judgment on plaintiff's indemnity claim. As part of its argument, defendant asserts that plaintiff can only seek indemnity for claims brought by third parties. After careful consideration, the court grants defendant's motion for summary judgment on plaintiffs indemnity claim because plaintiff does not allege that third parties have asserted a claim against it.
The Florida Supreme Court long has defined a contract for indemnity as "an agreement by which the promisor agrees to protect the promisee against loss or damages by reason of liability to a third party." Dade County School Board v. Radio Station WQBA, 731 So.2d 638, 643 (Fla.1999)(emphasis added); see Royal Indemn. Co. v. Knott, 101 Fla. 1495, 136 So. 474, 479 (Fla.1931)("the promisor in an indemnity contract undertakes to protect the promisee against loss or damage through liability on the part of latter to a third person.... ")(emphasis added). "Indemnity contracts are subject to general rules of contractual construction; thus an indemnity contract must be construed based on the intentions of the parties." Dade County, 731 So.2d at 643.
Section X.A of the contract between the parties provides:
[Law] agrees to indemnify, defend and hold harmless [FSBA] ... from any lawsuit, claim demand, fine, damage, cause of action, loss, liability or expense arising in connection with any injury to or death of persons or damage to or loss of property resulting from ... breach of contract, willful misconduct, intentional torts, negligent acts or omissions to act *1021 of [Law]... in performing the Services under this Agreement.
(Pl.'s App., Tab 1 at 5.) The language of the contract providing for indemnification from "any lawsuit, claim, demand, fire, damage, cause of action, loss, liability or expense" illustrates that the parties intended the contract to protect plaintiff against third-party claims.
Plaintiff nevertheless claims that the damage it suffered in this case amounts to a "loss." Reading the term "loss" together with the other terms listed in Section X.A and considering florida law, which requires indemnification against third party claims, illustrates that plaintiff's loss is not the kind of loss that the parties intended the indemnity contract to cover. See Raytheon subsidiary Support Co. v. Crouch, 548 So.2d 781, 784 (Fla. 4th DCA 1989)("... the interpretation of the contract should be consistent with reason, probability, and practical aspects of the transaction; ... the contract should be considered as a whole, not in its isolated parts."). Thus, because plaintiff does not allege that a third party has asserted a claim against it, plaintiffs indemnity claim fails and the court grants defendant's motion for summary judgment on that claim.

CONCLUSION
Accordingly, IT IS HEREBY ODERED that:
1. Plaintiffs motion for partial summary judgment on defendant's improper venue [Docket No. 20] defense is granted.
2. Plaintiffs motion for partial summary judgment on defendant's statute of limitations defense is granted.
3. Plaintiffs motion for partial summary judgment on defendant's economic loss rule defense is granted only as it relates to plaintiffs negligent misrepresentation claim.
4. Plaintiffs motion for partial summary judgment on defendant's economic loss rule defense is denied as it applies to plaintiffs fiduciary duty and negligence claims.
5. Plaintiffs motion for partial summary judgment on defendant's defense of failure to state a cause of action for damages is denied.
6. Plaintiffs motion for partial summary judgment on defendant's defense of failure to state a cause of action for indemnity is denied.
7. Defendant's motion for summary judgment on plaintiffs breach of fiduciary duty claim [Docket No. 20] is granted
8. Defendant's motion for summary judgment on plaintiffs negligence claim is granted.
9. Defendant's motion for summary judgment on plaintiffs indemnification claim is granted.
10. Defendant's motion for summary judgment on plaintiffs negligent misrepresentation claim is denied.
NOTES
[1] An initial question is whether state or federal law provides the rule for analyzing the forum selection clause in the parties' agreement. See Benge v. Software Galena, Inc., 608 F.Supp. 601, 606 (E.D.Mo.1985). The Eighth Circuit "does not yet appear to have taken a definitive position." Kirckof v. Brown, No. Civ. 01-476, 2002 WL 31718394 * 1 n. 2 (D.Minn. Nov. 27, 2002)(citing Farmland Indus, v. Frazier-Parrott Commodities, 806 F.2d 848 (8th Cir.1987)). The Eleventh and Second Circuits have held that interpreting a forum selection clause is a procedural question governed by federal law, while the Third Circuit has decided that it is a substantive question governed by state law. Id. (citing Eleventh, Second and Third Circuit cases). Following what appears to be the majority of courts in this and other circuits, the court applies federal law to interpret the forum selection clause at issue. See, e.g., Taylor Inv. Corp. v. Weil, 169 F.Supp.2d 1046, 1060 (D.Minn.2001)("The Court, sitting in diversity, will apply federal law to determine the applicability of the forum selection clause."); Fin. Sys. & Equip, v. Easy Sys., Inc., No. Civ. 99-2555-GTV, 2000 WL 714331 *1, at *2 (D.Kan. May 17, 2000)("The enforcement of a forum selection clause by a federal court sitting in diversity is determined under federal law rather than state law"); Best Buy Co. v. Onkyo U.S.A. Corp., Civ. No. 4-90-677, 1991 WL 156571 (D.Minn. Aug. 1, 1991)(applying federal law); Benge, 608 F.Supp. at 606 ("Federal law provides the rule for determining the enforceability of the forum selection clause in the agreement in question.") However, as plaintiff points out, the conflict is immaterial because the same result would be reached under federal or state law in this case. See, e.g., Kirckof, 2002 WL 31718394, at *1, n. 2; Celebrity Cruises, Inc. v. Hitosis, 785 So.2d 521, 522 (Fla.Dist.Ct.App.2000); Quinones v. Swiss Bank Corp., 509 So.2d 273, 274-75 (Fla.1987).
[2] The court in Kirckof provided an example of a permissive forum selection clause (Example 1) and a mandatory forum selection clause (Example 2):

Ex. 1. "The courts of California, County of Orange, shall have jurisdiction over the parties in any action at law relating to the subject matter or interpretation of this contract.". . .
Ex. 2. "Any legal action by either party under this agreement will be brought in Minnesota."
Kirckof, 2002 WL 31718394 at *2 (citations omitted).
[3] Defendant concedes that its defense is based in part upon the applicability of Florida's procedural and remedial law to plaintiff's claims in connection with defendant's first affirmative defense that the forum selection clause requires this action to be filed in Florida. However, as discussed, venue is proper in Minnesota.
[4] While the parties choice of law clause dictates that Florida law shall apply, the choice of law provisions only incorporate the substantive law of the chosen forum. Fredin, 176 F.R.D. at 309. Where there is no express choice of law agreement relating to remedy, procedure and remedy are governed by the law of the forum, in this case Minnesota. See United States Leasing Corp. v. Biba Inform. Processing Servs., 436 N.W.2d 823, 825 (Minn. Ct.App.1989).
[5] The holding in Excess Risk is consistent with the HIP rule that the Florida Supreme Court cited with approval in Moransais.
[6] While the Moransais court expressed some reservations about its reasoning in AFM, the court "continue[s] to believe the outcome of that case is sound." Moransais, 744 So.2d at 973.
[7] In diversity cases arising under Florida law, a federal court is bound by the law articulated by the Florida Supreme Court. Hilliard, 125 F.Supp.2d at 1079. If that court does not provide guidance, federal courts are "`bound to adhere to the decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise.'" Id. (quoting Silverberg v. Paine, Webber, Jackson & Curtis, Inc., 710 F.2d 678, 690 (11th Cir. 1983)).
[8] Defendant moved for an order granting its motion for a continuance of hearing on plaintiff's motion for partial summary judgment on defendant's sixth affirmative defense. The court denies that motion as moot based upon the parties' stipulation and their representations during oral argument.