**PROTEOTECH, INC., a Washington Corporation, Plaintiff,**

v.

**UNICITY INTERNATIONAL, INC., a Utah corporation, et al., Defendants.**

**No. C06–1297Z.**

United States District Court, W.D. Washington, at Seattle.

Feb. 27, 2008.

Darcy W. Shearer, Frederick Ross Boundy, Stuart R. Dunwoody, Davis Wright Tremaine (SEA), Seattle, WA, for Plaintiff.

David C. Reymann, Jeffrey J. Hunt, Timothy B. Smith, Parr Waddoups Brown Gee & Loveless, Salt Lake City, UT, Robert M. Sulkin, McNaul, Ebel, Nawrot, Helgren & Vance, Seattle, WA, for Defendants.

## ORDER

THOMAS S. ZILLY, District Judge.

THIS MATTER comes before the Court on Rexall Sundown, Inc.'s motion to dismiss the three causes of action asserted against it by ProteoTech, Inc. Having reviewed all papers filed in support of and in opposition to the motion, the Court does hereby ORDER:

(1) Rexall Sundown, Inc.'s motion to dismiss, docket no. 66, is GRANTED IN PART and DENIED IN PART;

(2) ProteoTech, Inc.'s claim for indemnification (Count VIII) is DISMISSED with prejudice, ProteoTech, Inc.'s patent infringement claim (Count II) is LIMITED to United States Patent No. 6,264,994, and in all other respects, Rexall Sundown, Inc.'s motion is DENIED; and

(3) The Clerk is directed to send a copy of this Order to all counsel of record.

### Background

In June 1997, the University of Washington granted an exclusive licence to Pro-

teoTech, Inc. ("ProteoTech") for technology that subsequently ripened into United States Patent No. 6,264,994 (issued July 24, 2001) ("the '994 patent") and United States Patent No. 6,939,570 (issued September 6, 2005) ("the '570 patent"). Amended Complaint at ¶¶ 12, 13, & 15 (docket no. 51) (copy attached as Exh. A to Motion to Dismiss (docket no. 66)). In September 1998, ProteoTech granted an exclusive, limited field of use, licence to Rexall Sundown, Inc. ("Rexall") with respect to the technology protected by both patents. *Id.* at ¶ 18; *see also* Response at 3 n. 2 (docket no. 70). Through various corporate acquisitions and mergers, Rexall Showcase, Inc. (a subsidiary of Rexall) was combined with another company (Enrich International, Inc.) and then purchased by an entity that eventually took the name Unicity International, Inc. ("Unicity"). Amended Complaint at ¶ 20. In July 2003, Rexall granted a non-exclusive, transferable sublicense to Unicity's predecessor. *Id.* at ¶ 26; *see* Technology Sublicense Agreement at ¶ 2.1, Exh. C to Motion to Dismiss (docket no. 66). Unicity manufactures and sells a product under the name CognoBlend Herbal Supplement. Amended Complaint at ¶ 22. Marketing materials state that "CognoBlend is patented under" the '994 patent; the label indicates that "CognoBlend with PTI–00703 is under U.S. patent pending." *Id.* at ¶ 24. "PTI–00703" is a registered trademark, in which ProteoTech retains all rights despite its lack of use. *Id.* at ¶¶ 16 & 17. ProteoTech asserts that Rexall had no authority to sublicense the technology at issue to Unicity, and it has alleged against Rexall the following causes of action: patent infringement, contributory trademark infringement, and indemnity. *Id.* at Counts II, IV, and VIII. Rexall has moved to dismiss all three of ProteoTech's claims pursuant to Rule 12(b)(6); Rexall has not moved for relief as to the third-party complaint brought against it by Unicity.

## Discussion

### A. Standard for Motion to Dismiss

Although a complaint challenged by a Rule 12(b)(6) motion to dismiss need not provide detailed factual allegations, it must offer "more than labels and conclusions" and contain more than a "formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly,* —— U.S. ——, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007). The complaint must indicate more than mere speculation of a right to relief. *Id.* at 1965. When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 1966. A complaint may be lacking for one of two reasons: (i) absence of a cognizable legal theory, or (ii) insufficient facts under a cognizable legal claim. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir.1984). In ruling on a motion to dismiss, the Court must assume the truth of the plaintiff's allegations and draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). The question for the Court is whether the facts in the complaint sufficiently state a "plausible" ground for relief. *Twombly,* 127 S.Ct. at 1974. If the Court considers matters outside the complaint, it must convert the motion into one for summary judgment. Fed.R.Civ.P. 12(d). If the Court dismisses the complaint or portions thereof, it must consider whether to grant leave to amend. *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir.2000).

### B. Patent Infringement

Rexall contends that "as a matter of law, the mere act of licensing does not constitute inducement of infringement." Motion

to Dismiss at 6 (docket no. 66). For support, Rexall cites two cases: *Hewlett–Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464 (Fed.Cir.1990), and *TorPharm Inc. v. Novopharm Ltd.*, 48 U.S.P.Q.2d 1471 (E.D.N.C.1998). Neither case stands for the broad proposition stated.

In *Hewlett–Packard,* the plaintiff and the defendant each held patents for similar technology; Hewlett–Packard Company ("HP") was the assignee of the "LaBarre patent," while Bausch & Lomb Incorporated ("B & L") was the assignee of the "Yeiser patent." 909 F.2d at 1465–66. Both the LaBarre patent and the Yeiser patent described the mechanism for feeding paper through an X–Y plotter. *Id.* at 1466. In late 1982 or early 1983, B & L began selling, through its Houston Instruments division, a form of X–Y plotter that used the technology protected by the LaBarre patent. *Id.* at 1467. In September 1985, B & L sold the Houston Instruments division to Ametek, Inc. ("Ametek") for $43 million and concurrently executed an agreement pursuant to which it granted to Ametek a license under the Yeiser patent. *Id.* HP sued B & L for direct infringement during the period preceding the sale to Ametek and for inducement of infringement for the subsequent time frame. *Id.* In its defense, B & L challenged the validity of the LaBarre patent in light of the earlier Yeiser patent and denied that its sale of the Houston Instruments division and related activities constituted inducement of infringement. *Id.* The Federal Circuit affirmed the district court's ruling that the LaBarre patent was valid and that B & L was not liable for infringement subsequent to the sale of the Houston Instruments division. *Id.* at 1468–70. As to the latter issue, the Federal Circuit clarified that an element of infringement by inducement (a form of direct infringement, also known as "active inducement") is "proof of actual intent to cause the acts

which constitute infringement." *Id.* at 1469. The Federal Circuit then examined the "totality of events" and concluded that B & L "was merely interested in divesting itself of Houston Instruments at the highest possible price." *Id.* It found that the grant of a license from B & L to Ametek under the Yeiser patent was not probative of any intent to induce infringement; rather the license "merely freed Ametek from whatever bar the Yeiser patent would have been." *Id.* at 1470. The license could not and did not purport to insulate Ametek from the effect of other patents, including the LaBarre patent. *See id.*

The *Hewlett–Packard* case is both distinguishable and not accurately interpreted by Rexall. In *Hewlett–Packard,* the license granted by B & L to Ametek involved a patent different from the one HP accused B & L of infringing or inducing Ametek to infringe. No allegation was made in that case that B & L lacked the authority or right to grant Ametek a license in the Yeiser patent. The license under the Yeiser patent was simply not meaningful evidence concerning B & L's intent to induce Ametek to infringe the LaBarre patent. In contrast, here, Rexall has granted a sublicense to Unicity concerning the same patent ProteoTech alleges that both Rexall and Unicity have infringed. ProteoTech challenges Rexall's ability to grant such sublicense, and the sublicense therefore has some relevance concerning Rexall's intent, at least with regard to the '994 patent, which predates the sublicense. Moreover, the *Hewlett–Packard* opinion does not suggest that licensing alone could never be adequate evidence of the requisite intent; rather, the Federal Circuit examined all of the evidence in that case and concluded that B & L's intent was not to infringe HP's patent, but rather to get rid of Houston Instruments "lock, stock, and barrel." *Id.* at

1469, 1470. Here, however, the Court cannot conclude with any degree of certainty that ProteoTech has not presented a "plausible" basis for finding Rexall had the requisite intent for an infringement by inducement claim.

The *TorPharm* case is even further off point. In that case, the plaintiff TorPharm Inc. ("TorPharm") had sued Novopharm, Ltd. ("Novopharm") for infringement of TorPharm's patent for the drug ranitidine hydrochloride (the generic name for Zantac), and it was seeking leave to join as a defendant Genpharm Inc. ("Genpharm"). 48 U.S.P.Q.2d at 1472–73. Genpharm did not manufacture or import ranitidine hydrochloride on behalf of Novopharm, and it did not know the chemical properties of Novopharm's version or the manufacturing processes used by Novopharm or its subsidiary, Granutec, Inc. *Id.* at 1472–73. The only connection between Genpharm and Novopharm was apparently a negotiated waiver submitted by Genpharm to the Food and Drug Administration ("FDA") pursuant to which the FDA approved Novopharm's Abbreviated New Drug Application ("ANDA") despite Genpharm's statutory right to exclusivity. *Id.* at 1472. A company may not market a generic drug without the FDA's approval of its AND A, and an award of exclusivity guarantees that the FDA will not grant approval of another company's ANDA for the same product until the statutory 180–day period expires. *Id.* In denying TorPharm's motion for leave to amend its complaint, the District Court observed:

> Genpharm only notified the FDA that it waived exclusivity as to Granutec. This waiver of exclusivity itself did not allow Novopharm to enter the United States ranitidine hydrochloride market because the FDA still had to approve Granutec's ANDA. The removal of a regulatory barrier by Genpharm which permitted the FDA to approve Novopharm's

> ANDA does not give rise to liability for contributory infringement.

*Id.* at 1474. The District Court further held that TorPharm's motion for leave to amend its 7 complaint was futile because it did not allege facts necessary to show that Genpharm had the requisite intent for infringement by inducement. *Id.* The proposed amended complaint did not allege on Genpharm's part any knowledge of Novopharm's product or process, any control over the manufacture, import, sale, or use of Novopharm's product, or any involvement with Novopharm's conduct, other than compensation received in exchange for the waiver submitted to the FDA. *Id.*

■ Like the *Hewlett–Packard* case, the *TorPharm* opinion concerns different facts and a limited holding. Unlike the case before the Court, *TorPharm* did not involve a license or sublicense, but rather a waiver of a statutory entitlement. The waiver did not ensure FDA approval of the ANDA at issue, and it did not speak to the effect of any patent concerning ranitidine hydrochloride. In addition, the *TorPharm* decision does not support Rexall's broadly worded argument; at most, the case stands for the proposition that a complete absence of facts demonstrating involvement on the part of the proposed defendant does not warrant joinder. Here, in contrast, ProteoTech alleges that Rexall had a subsidiary relationship with the company that through various acquisitions became part of the corporate entity now accused of infringing the patent ProteoTech licensed to Rexall. The case now before the Court is simply not one in which the alleged inducer had no connection to the alleged infringer, and Rexall's "mere licensing" theory does not support dismissal of ProteoTech's claim of patent infringement.

Rexall also makes the more limited contention that because the '570 patent was not issued until after the sublicense was granted to Unicity, Count II should be dismissed in part as to the '570 patent. ProteoTech does not appear to contest this point. *See* Response at 3 n. 2 (docket no. 70) ("ProteoTech does not dispute that it cannot assert a[n] inducement of infringement claim against Rexall based on the '570 patent because that patent was issued after the date of the Sublicense and termination of the License Agreement."). ProteoTech maintains, however, that it can assert infringement by inducement as to the '994 patent, and Rexall does not appear to disagree with ProteoTech's interpretation of the technology purportedly granted by the sublicense to Unicity. The sublicense provides that the term "Licensed Technology" has the same meaning ascribed by the license agreement between ProteoTech and Rexall. *See* Technology Sublicense Agreement at ¶ 1.2, Exh. C to Motion to Dismiss (docket no. 66). The "Licensed Technology" is therefore defined as

the subject matter within the claims of U.S. Patent Application serial number 09/079,829, entitled "COMPOSITION AND METHODS FOR TREATING ALZHEIMER'S DISEASE AND OTHER AMYLOIDOSES," including PTI–00703 and also including (i) *subsequently filed applications on the same subject matter* or on PTI–00703, and (ii) all corresponding PCT and other foreign applications, and all divisions, continuations, continuations-in-part thereof, together with all patents and reissues issued thereon, but only as and to the extent that they relate to and may be used in the Field.

License Agreement at ¶ 1.5, Exh. B to Motion to Dismiss (emphasis added). "Field" is defined as "dietary supplement use for Alzheimer's disease and Type II diabetes." *Id.* at ¶ 1.3. Patent Applica-

tion serial number 09/079,829 matured into the '570 patent. Amended Complaint at ¶ 18. According to ProteoTech, the '994 patent ripened from a subsequently filed application on the same subject matter. Response at 3 n. 2. Rexall has provided no argument to the contrary. Therefore, the Court DENIES Rexall's motion to dismiss Count II, but LIMITS the claim to the '994 patent.

### C. *Trademark Infringement*

■ ProteoTech alleges that Unicity has used and continues to use the trademark "PTI–00703" to market its products and that Unicity is not authorized to do so via "license or otherwise." Amended Complaint at ¶ 29 (docket no. 51). Rexall contends that, because the sublicense did not grant Unicity any rights to use the mark "PTI–00703," it cannot be held liable for contributory trademark infringement. Rexall relies on the following provision of the sublicense:

Nothing contained in this Agreement shall be construed as . . . conferring any license or right with respect to any trademark, trade or brand name, or corporate name of either party or Licensor, or any other name or mark, or contraction, abbreviation or simulation thereof . . . .

Technology Sublicense Agreement at ¶ 5.3.3, Exh. C to Motion to Dismiss (docket no. 66). The term "Licensor" refers to ProteoTech. *Id.* at Preamble. In response, ProteoTech explains that it is not relying on the sublicense as evidence of Rexall's wrongdoing, but rather on the chain of events pursuant to which Unicity continued marketing its product with the brand "PTI–00703." ProteoTech alleges that "Rexall knew or should have known that Unicity was using the PTI–00703 mark" and "granted Unicity an implied license to continue advertising and promoting sales

of the Infringing Products through use of the PTI–00703 mark." Amended Complaint at ¶ 30. Although the details are sparse, ProteoTech appears to have alleged sufficient facts to present a plausible claim of contributory trademark infringement, which requires proof that the defendant " 'intentionally induced' the primary infringer to infringe," *Perfect 10, Inc. v. Visa Internat'l Serv. Ass'n,* 494 F.3d 788, 807 (9th Cir.2007), and the Court DENIES Rexall's motion to dismiss Count IV.

### D. *Indemnification*

■ Rexall moves to dismiss ProteoTech's claim for indemnification on two grounds: (i) the license agreement does not require Rexall to indemnify ProteoTech as to an action ProteoTech filed; and (ii) the license agreement requires arbitration of all disputes other than those related to the enforcement of intellectual property rights. Rexall relies on the following provisions of the parties' agreement:

> Rexall agrees to defend, indemnify and hold ProteoTech, its officers, founders, directors, employees or agents harmless from and against any and all claims, damages, expenses and losses (including reasonable attorneys' fees) or liability to any third party resulting from any act or omission by Rexall relating to Rexall's performance hereunder.

License Agreement at ¶ 6.2, Exh. B to Motion to Dismiss (docket no. 66).

> All disputes arising out of or under this Agreement—other than disputes related to the enforcement of its intellectual property rights by ProteoTech—shall be submitted to binding arbitration by the American Arbitration Association (AAA) to be heard in Palm Beach County, Florida if proceedings are initiated by ProteoTech and King County, Washington if proceedings are initiated by Rexall, under the rules then in force.

*Id.* at ¶ 12.4. The License Agreement is governed by Florida law. *Id.* at ¶¶ 12.2 & 14.

■ Rexall construes the agreement as calling for indemnification only with respect to the claims of third parties. ProteoTech argues that the indemnification clause governs any and all claims resulting from Rexall's acts or omissions *or* liability to third parties. ProteoTech also contends that, to the extent the agreement is ambiguous, interpretation is an issue for the jury. ProteoTech's reading of the indemnification provision, however, is simply unreasonable. "A contract for indemnity is an agreement by which the promisor agrees to protect the promisee against loss or damages by reason of liability to a third party." *Dade County Sch. Bd. v. Radio Station WQBA,* 731 So.2d 638, 643 (Fla. 1999). ProteoTech's interpretation would transform the indemnification clause into a blank check to sue and collect attorneys' fees, and the Court rejects ProteoTech's argument. *See Florida State Bd. of Admin. v. Law Eng'g & Envtl. Serv., Inc.,* 262 F.Supp.2d 1004, 1021 (D.Minn.2003) (applying Florida law to grant summary judgment against plaintiff's claim for indemnification "because plaintiff does not allege that a third party has asserted a claim against it"). The Court concludes that the indemnification provision at issue is unambiguous and is limited to claims or liability "to any third party." Moreover, the Court is persuaded that any dispute concerning indemnification falls squarely within the arbitration clause of the parties' agreement. Thus, the Court GRANTS Rexall's motion to dismiss Count VIII.

### Conclusion

For the foregoing reasons, Rexall's motion to dismiss is GRANTED IN PART and DENIED IN PART. ProteoTech's claim for indemnification (Count VIII of

the Amended Complaint) is DISMISSED with prejudice, and ProteoTech's claim against Rexall for patent infringement (Count II of the Amended Complaint) is LIMITED to actions related to United States Patent No. 6,264,994. In all other respects, Rexall's motion is DENIED.

IT IS SO ORDERED.